## D'Arros's Appeal.

1. A failure to support his wife must concur with drunkenness to deprive the husband of the right to the wife's personal property, under the provisions of the Act of May 4th 1855.

2. The Supreme Court will not review the findings of fact in the Orphans' Court unless the entire evidence is brought up.

3. *It seems*, it is ground for the dismissal of an appeal that it is taken by one who did not file the exceptions in the court below.

February 3d 1879.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Appeal from the Orphans' Court of *Philadelphia county*: Of January Term 1879.   No. 61.

Appeal of Marie D'Arros, from the decree of the court confirming the adjudication upon the account of the executor of the estate of Marquerite Cremers, deceased.

The decedent died March 28th 1874, leaving a will bearing date the day of her death.   She left surviving, her husband, Calixte Cremers, but no issue.

Decedent, after bequeathing certain pecuniary legacies to persons named in her said will, gave and bequeathed all the residue of her estate unto her sister, Mary Roberts, and further provided, as follows: "I do not desire any construction to be placed upon any clause of this will by which any of my said estate shall accrue to my husband, Calixte Cremers."

Decedent and her husband were both natives of France.   She first emigrated to the United States and came to this city.   After some time she returned to her native land and there was married. In the year 1868, decedent and her husband arrived in this city, with about $200 in money in their possession, with which they began housekeeping in an humble manner, occupying but two rooms in a small dwelling-house.   They were industrious and frugal.   Decedent went out from her home to work as a dress-maker, and her husband labored at home at his trade as a tailor.   They thus lived and labored for about two years.   Their savings were deposited by decedent for safe-keeping at the "Academy of Notre Dame" with the sisters in charge.   At the end of this period of time, decedent and her husband had saved and accumulated sufficient money to enable her to purchase the establishment of a French mantua-maker, on Locust street above Twelfth, to which they both removed.   Decedent and her husband had cards printed and circulated bearing their joint names; but she managed the dress-making business, while he continued to work for various parties and firms as a tailor and cutter, and when at home assisted his wife by keeping her books of account and making out bills to her customers.   About three years prior to decedent's death, her husband began the habit of indulging to excess

in the use of intoxicating liquor. He, although working at his trade, would very frequently return home in an intoxicated condition. He would be seen upon the public streets in this condition, both by day and night; was often brought to his home by a police officer, and upon one occasion was taken to the police-station and fined for drunkenness. At other times he was sober, worked at his trade regularly, gave his wages to his wife, and assisted her in the business carried on by her. Their domestic relations were harmonious, but marred by claimant's habits of frequent intoxication. Husband and wife attended church together. She was kind and affectionate towards him and nursed him in sickness. Decedent managed the domestic affairs of her household, provided for its wants, paid the rent, servant's wages, &c., and during the latter part of her life, at least, if not from the beginning of her married life, she had the control and management of everything connected with the livelihood of herself and husband.

In August 1873, she provided him with the funds necessary for a visit to France, in order to see his relatives, and to bring with him a niece, to learn the trade of a mantua-maker. Decedent afterwards expressed her intention of joining her husband abroad, but never carried out that intention. When he sailed, she with a number of friends accompanied him to the steamer, to witness his departure, and during his absence corresponded with him by letter. He went abroad in August 1873, and during his absence found employment in France. As stated, decedent died in March 1874, after a short illness. Her husband was without the means to immediately return home, but as soon as he was able he came to this city, went to his residence, but was refused admission by his sister-in-law (his wife's sister), who was in possession of the premises. He afterwards obtained an entrance with the aid of a constable, and, accompanied by his counsel, had an interview with his sister-in-law and the executor of his wife's will, the present accountant. The husband took no further legal proceedings, so far as appeared from the evidence, but allowed the executor to remain in charge of the assets and property claimed by the latter as the separate property of his testatrix. The executor, however, had full notice of the claim of ownership by the husband; and notwithstanding this fact he entered upon the administration of the estate, incurred expenses, paid collateral inheritance tax and bills presented by parties claiming to be creditors of the decedent. The husband claimed the balance of the fund after the payment of the expenses of the administration.

The auditing judge, Hanna, P. J., found the following facts:

"1. That decedent and her husband, when they arrived in this country, were in very humble circumstances, their joint fortune amounting to $200.

"2. That each worked at the trade they had learned, and by the savings of their joint earnings were enabled to enter upon a more

extensive business, managed almost exclusively by decedent. That said business was commenced in the joint names of husband and wife, but the latter was the manager.

" 3. That the husband continued to work at his separate occupation, assisting his wife when at home, and giving his wages or part thereof, to her.

" 4. That the husband became addicted to the frequent use of intoxicating liquors, but did not become a sot and habitual drunkard.

" 5. That he did not desert his wife at any time, nor neglect or refuse to contribute to her support.

" 6. That the goods and chattels, property and effects, in the possession of decedent at the time of her death, were in the joint possession of herself and husband, who was temporarily absent in France, with her knowledge and consent. And that the moneys in her possession, and due to her, were the savings and results of a business carried on and managed by her, with the assistance from time to time of her husband, and moneys received from him."

The learned judge was of the opinion, therefore, that the facts did not present such a case as is contemplated by the Act of May 14th 1855; and that in view of these facts, the husband must be considered as the owner of the goods and chattels, stock in trade, if any, moneys and other personal property, in the possession of his wife at the date of her death, and entitled to the custody of the same.

The balance of the fund in the hands of the executor, was then awarded to the husband, the credit of the accountant for the collateral inheritance tax being disallowed. The executor filed exceptions which the court dismissed and confirmed the adjudication. No exceptions were filed by Marie D'Arros, but she took this appeal from the above action of the court.

*Benjamin Harris Brewster*, for appellant.—The husband, by his constant use of intoxicating drinks, was incapacitated from contributing to the support of his wife. He practically abandoned her by remaining abroad. He is clearly within the provisions of the Act of 1855: Black *v.* Tricker, 9 P. F. Smith 13.

*Daniel Dougherty*, for appellee.—The entire property, being the joint earnings and savings of both husband and wife, belonged to the husband: Speakman's Appeal, 21 P. F. Smith 25; Bucher *v.* Ream, 18 Id. 421. The husband was not an habitual drunkard. He did not refuse to support his wife, nor was his absence in Europe with any intention of deserting her. His indulgence in drink was occasional, not continuous. This case is clearly distinguishable from Black *v.* Tricker. There the husband repeatedly and for a long period of time, ill-treated and neglected his family, and refused to provide for their support, and the property was acquired after

the period of drunkenness and refusal to provide. But the appellant filed no exceptions in the court below. This court will not, therefore, reverse: Mylin's Estate, 7 Watts 64; Hise's Estate, 5 Id. 157.

The judgment of the Supreme Court was entered March 3d 1879.

PER CURIAM.—The evidence printed in the appellant's paper-book is headed "Summary of Testimony." It is clear that to enable this court to review the findings of fact in the court below, the entire evidence should be brought up. The present appellant did not file exceptions, and the executor who did has not appealed. He is the only party aggrieved by the surcharge of the collateral inheritance tax, and that exception is not before us. We think, however, though the appeal might be dismissed on these grounds without going further, that the conclusion arrived at by the learned court, from the facts as found by the auditing judge, was entirely right.

Decree affirmed, and appeal dismissed at the costs of the appellant.