## Shaw's Estate.

*Decedents' estates—Husband and wife—Neglect of husband to support wife—Exclusion of husband from sharing in wife's estate—Act of May 4, 1855, P. L. 430.*

A finding by the orphans' court that a husband through drunkenness had neglected to provide for his wife during the last year of her life, and that therefore he is properly excluded from sharing in her estate, will not be reversed by the appellate court where the evidence is sufficient to support the finding, and there is no manifest error.

Argued May 12, 1913. Appeal, No. 198, April T., 1913, by William Shaw, from decree of O. C. Allegheny Co., Dec. T., 1912, No. 8, distributing estate of Ann J. H. Shaw, deceased. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Exceptions to adjudication.

HAWKINS, P. J., filed the following opinion:

The question involved in this case is the forfeiture of the surviving husband's interest in his wife's estate.

Mrs. Shaw died September 18, 1911, leaving a will in which the following provision appears:

"To my husband, William Shaw, I will . . . . the sum of one dollar as his sole share in my estate. On account of his dissipation and failure to support me, I do not wish any of my estate to go to him, other than the sum of one dollar as before mentioned."

Mr. Shaw notified the executor in writing of his election to take against the will, but at the audit objection

was made that this notice was not in the form prescribed by the act of 1911 and he therefore had no status. This objection was sustained by the court; but leave having been asked for time within which to file an amended election, this was allowed, and such a paper afterward filed under objection. Prior to her marriage Mrs. Shaw had been servant in one family connection twenty-five years and is described as a "remarkable" woman, above the "ordinary" in her station in life. She had thrifty habits and had accumulated quite a sum at the time of her marriage in 1909. After the marriage Mrs. Shaw became afflicted with cancer which gradually progressed until she died September 18, 1911. The evidence shows that for more than a year before his wife's death Shaw would go on a spree, when his monthly pay day came, which would last a week, or ten days, or as his wife's physician testified as long as his wages would last. In the meantime Mrs. Shaw made frequent drafts on her hard-earned savings, which no doubt, in view of her thrifty habits, were used for necessaries of life. She had loaned her husband money with which to pay his first wife's funeral expenses, and he had never repaid it. She paid her doctor's bill. Levy having been made for rent of the house which they occupied, two months before she died, she had at his suggestion gone her way, and he, his; and while he is said to have visited her daily, he tendered neither services, nor money for her maintenance, and bills for her board and lodging and funeral expenses have been presented for payment out of her estate. The common instincts of humanity would have suggested the expression of material assistance. Having failed to give this, the purpose of his visits must be left to conjecture.

Evidence was adduced to show that Shaw had paid the rent and grocery bills up to the time he lost his position; but in view of the waste due to his habits, the necessary implication is that these were paid out of his wife's money. Counsel makes the remarkable suggestion

that Shaw cannot be held to have been in default, since there is no evidence that he was ever asked to pay; but no man worthy of the name will need be told to maintain his wife. By his marriage vows he pledged himself to "keep her in sickness and in health"; and the Act of May 4, 1855, P. L. 430, justly declares that he shall forfeit all interest in his wife's estate when he fails.

So evidence was adduced to the effect that Shaw had told a friend he had resigned his position because of his wife's illness; if so it was an act of folly, for his wages were needed for her maintenance; and he utterly failed to carry out his purpose. He even made no offer to assist the doctor in dressing the sore, though obviously needed. The probability is that he lost his position by reason of his intemperate habits.

It follows that Mrs. Shaw's declaration of nonsupport was justified by the facts and that her husband has forfeited his right under the intestate law in her estate.

*Error assigned* was in dismissing exceptions to adjudication.

*Morton Hunter*, for appellant, cited: D'Arros' App., 89 Pa. 51; Hart v. McGrew, 11 Atl. Repr. 617; Little's Est., 7 Phila. 495.

*James T. Buchanan*, for appellee, cited: Ellison v. Anderson, 110 Pa. 486; Dusenbury's Est., 16 Pa. Dist. Rep. 389; Hilker's Est., 5 Pa. C. C. R. 142; Markley v. Wartman, 9 Phila. 236; Perkins v. Perkins, 62 Barb. (N. Y.) 531.

OPINION BY MORRISON, J., July 16, 1913:

Ann J. H. Shaw was married to the appellant in October, 1909; and she died from the effects of a cancer on September 18, 1911. On September 2, 1911, she made her last will and testament, item 10 of which reads as follows: "To my husband, William Shaw, I will, devise, etc., the

sum of $1.00 (One dollar) as his sole share in my estate. On account of his dissipation and failure to support me, I do not wish any of my estate to go to him, other than the sum of $1.00 as before mentioned."

The testimony shows that the decedent had been an unusually industrious and economical woman and that prior to her marriage to the appellant she had accumulated in the Dollar Savings Bank of Pittsburg several thousand dollars in money. After her decease the appellant gave notice that he elected to take against her will and he first claimed one-half of the estate and subsequently gave notice that he claimed the whole of the estate under the Act of April 1, 1909, P. L. 87, because she died leaving to survive her a husband and collateral heirs only.

The whole question involved in this appeal is the soundness of the conclusion and decree of the court below, in substance, that William Shaw, husband of Ann J. H. Shaw, deceased, had for one year and upwards previous to the death of his wife, willfully neglected and refused to provide for her and therefore forfeited any and all interest that he otherwise would have been entitled to in her estate, except the $1.00 mentioned in her will: Act of May 4, 1855, P. L. 430. Section 2 of that act reads: "That whensoever any husband, from drunkenness, profligacy or other cause, shall neglect or refuse to provide for his wife, or shall desert her, she shall have all the rights and privileges secured to a feme sole trader, under the Act of the twenty-second of February, one thousand seven hundred and eighteen, entitled, 'An Act concerning feme sole traders,' and be subject as therein provided, and her property, real and personal, howsoever acquired, shall be subject to her full and absolute disposal during life, or by will, without any liability to be interfered with or obtained by such husband, and in case of her intestacy shall go to her next of kin, as if he were previously dead.

"Section 5. That no husband who shall have as aforesaid, for one year or upwards previous to the death of his wife, wilfully neglected or refused to provide for his wife,

or shall have for that period or upwards wilfully and maliciously deserted her, shall have the right to claim any right or title in her real or personal estate after her decease, as tenant by the courtesy, or under the intestate laws of this commonwealth."

It is not contended that the appellant had deserted his wife but the objection to his claim to her estate was put upon the ground of his drunkenness and neglect and refusal to provide for his wife for the last year and upwards of her life.

The hearing and adjudication in the distribution of the decedent's estate was before the late Judge HAWKINS, and a large number of witnesses were sworn and examined in his presence and, as is usual in such cases, there was considerable conflict in the testimony. We have read all of it carefully, however, and have given due consideration to the argument of the learned counsel and the authorities cited by them. This is one of the cases where the auditing judge sees the witnesses and hears them testify, and, therefore, he had a much better opportunity of judging of their credibility and the value of their testimony than the appellate court can have from the printed record. Our examination of the case has not convinced us of error or abuse of discretion sufficient to call for a reversal of the decree of distribution. We think there is sufficient evidence to warrant the learned judge's finding that the appellant had, within the meaning of the act of 1855, neglected and refused to provide for his wife as the law required him to do. In our opinion the testimony indicates that if the decedent had not been industrious and economical so that she was provided with a considerable sum of money before she married the appellant, it is highly probable that after such marriage and her affliction with a cancer she would have become a public charge.

The six judges who heard the argument of this case concur in the view that the decree ought to be affirmed.

The assignments of error are all dismissed, and the decree is affirmed at the cost of William Shaw, appellant.