# Kvist's Estate.

*Decedents' estates—Husband and wife—Forfeiture of right of curtesy—Desertion and nonsupport—Act of May 4, 1855, P. L. 430, Sections 2 and 5.*

1. Section 5 of the Act of May 4, 1855, P. L. 430, providing "That no husband who shall have as aforesaid, for one year or upwards previous to the death of his wife, wilfully neglected or refused to provide for his wife, or shall have for that period or upwards wilfully and maliciously deserted her, shall have the right to claim any right or title in her real or personal estate after her decease, as tenant by the curtesy, or under the intestate laws of this Commonwealth," deals with a separate subject-matter and is to be considered separately from Section 2, which provides that whenever a husband "from drunkenness, profligacy or other cause, shall neglect or refuse to provide for his wife, or shall desert her, she shall have all the rights and privileges secured to a feme sole trader"; and under Section 5 the husband loses his curtesy rights either by his neglect or refusal to support his wife or by wilful or malicious desertion. If there is a failure to support, proof of desertion is unnecessary.

2. If a husband and wife live separately under a mutual agreement by which the wife voluntarily releases her husband from contributing to her support, his curtesy rights are not forfeited, but the mere fact that the wife does not demand support does not excuse the husband from the performance of his duty towards her.

3. Where a man and wife were married in 1900 and lived together as butler and cook in the same family for one year, and in 1904 obtained employment in different cities, and for eight years preceding the wife's death in 1914, the husband did not contribute toward her support, and she made no request for assistance, and he made no offer to assist her, and did not see her for several years previous to her death, although he admitted having received from her at or about the time of her marriage the sum of $314, which was applied as part consideration for a house purchased in his name, the lower court did not err in entering a decree, in accord with the findings of the auditor, distributing the estate of the wife among her next of kin to the exclusion of the husband on the ground that by failure to support the wife for more than one year before her death, he was barred by the provisions of the Act of 1855 from any share in her estate.

*Evidence—Decedent's estate—Husband claiming against wife's heirs—Declarations of wife—Self-serving declarations—Harmless error—Act of May 23, 1887, Section 5, P. L. 158.*

4. A husband may testify in proceedings for the distribution of his wife's estate claimed by her heirs against him, as the parties are claiming by devolution from the deceased and are therefore directly within Section 5 of the Act of May 23, 1887, P. L. 158.

5. In such case, the admission of incompetent evidence as to self-serving declarations of the deceased was not reversible error, where it appeared that the auditing judge did not base his conclusion upon such testimony.

*Practice, Supreme Court—Findings of fact of auditor—Sufficiency of evidence.*

6. The findings of fact of an auditing judge based upon sufficient evidence, and confirmed by the Orphans' Court, will not be disturbed unless error is clearly shown.

Argued Oct. 18, 1916. Appeal, No. 83, Oct. T., 1916, by Alfred E. Randall, from decree of O. C. Allegheny Co., Jan. T., 1916, No. 88, dismissing exceptions to adjudication in Estate of Anna Kvist, Deceased. Before BROWN, C. J., MESTREZAT, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Exceptions to adjudication. Before MILLER, J.

The auditing judge found that Alfred E. Randall had failed to support his wife for more than one year before her death, and was barred by the provisions of the Act of May 4, 1855, P. L. 430, from taking any share in her estate. The Orphans' Court dismissed exceptions to the adjudication and entered a decree in accordance therewith. Alfred E. Randall appealed.

*Errors assigned* were in dismissing the exceptions.

*Richard H. Hawkins,* of *Dalzell, Fisher & Hawkins,* for appellant.—Sections 2 and 5 of the Act of May 4, 1855, P. L. 430, must be construed together; the failure to support the wife must concur with drunkenness, prof-

ligacy or other cause in order to preclude the husband from asserting his right of curtesy in his deceased wife's estate: D'Arros's App., 89 Pa. 51; Shaw's Est., 54 Pa. Superior Ct. 444; Charlton's Est., 3 W. N. C. 305; Grubb's Est., 10 Pa. D. R. 443; Hart et al. v. McGrew, 11 Atl. Repr. 617; Kuffner's Est., 58 P. L. J. 81; White's Est., 188 Pa. 633; Hayes's Est., 23 Pa. Superior Ct. 570.

Testimony as to alleged declarations by the wife shortly before her death, although for the purpose of rebutting the testimony of the husband, was incompetent: Bealor v. Hahn, 117 Pa. 169; Hahn v. Bealor, 132 Pa. 242; Munson v. Crookston, 219 Pa. 419.

*H. F. Stambaugh,* with him *Watson & Freeman* and *Lazear & Blaxter,* for appellee.—A husband, not having contributed to the wife's support for a period of at least eight years prior to her death and not having lived with her for a period of ten years prior to her death, loses his right of curtesy in her estate: Hahn v. Bealor, 132 Pa. 242; Weller v. Weller, 213 Pa. 265; Birchard's Est., 154 Pa. 89; White's Est., 188 Pa. 633; Kuffner's Est., 58 P. L. J. 81.

There is no evidence that decedent voluntarily assented to living apart from her husband or that she released him from his duty to support her.

The husband has shown no reasonable cause or justification for his failure to support decedent: Birchard's Est., 154 Pa. 89; Weller v. Weller, 213 Pa. 265.

Declarations of the decedent as to the amount of money she had given him were admissible to rebut his testimony: Lightner et al. v. Wike, 4 S. & R. 203.

The husband was not a competent witness as against decedent's estate to prove any agreement between himself and decedent: Act May 23, 1887, P. L. 158; Hunt's App., 100 Pa. 590; Robinson's Est., 222 Pa. 113.

OPINION BY MR. JUSTICE FRAZER, January 8, 1917:

Alfred E. Randall appeals from a decree of the Orphans' Court of Allegheny County distributing the estate of his deceased wife among her next of kin to the exclusion of appellant on the ground that by his failure to support his wife for more than one year before her death, he is barred by the provisions of the Act of May 4, 1855, P. L. 430, from taking any share in her estate.

Mrs. Randall, who lived under her maiden name, Anna Kvist, married appellant October 21, 1900, in New York City, and, after keeping a boarding house for a year following her marriage, both secured employment in the same family, she as a cook and he as butler. These positions they retained for about a year and failing to obtain another suitable place together, according to Randall's testimony, decided to take separate places. He secured a position in New York City and continued in this employment for two years, during which time his wife occupied two rooms in the same city where he frequently called to see her. In 1904, he obtained employment in Morristown, New York, and his wife took a place in Albany. A year later he was employed in Pittsfield, Massachusetts, and she being in poor health followed him to that city and lived there in a boarding house, where he visited her frequently. After remaining four months in Pittsfield she returned to New York City and from that time they remained apart, each working at various places, he as a butler and valet and she as cook. At the time of her death, July 4, 1914, Mrs. Randall was employed as a domestic in the City of Pittsburgh under her maiden name and had been so employed since 1907, and appellant was residing in Richfield, Connecticut; they had not seen each other for several years previous to her death. During this period he sent her occasional letters and postal cards, but seldom heard from her owing to the fact, as he states, that "it was very difficult for her to write English." He neither furnished her with money nor provided her with maintenance or support however

after their separation in 1906. While he testified she made no requests for assistance he does not say he offered her any. On the contrary, he admits having received from her at one time before her marriage the sum of $314 to be applied as part consideration for a house purchased in Schenectady, New York, the title to which was taken and still remains in his name.

The auditing judge in reviewing the testimony says: "Accepting his testimony at its full value, and it is not to be presumed that he omitted to state any material fact, which would support his claim, it is entirely clear that he did not offer to contribute one dollar toward her support for at least a half score of years; and nowhere in his testimony can there be found any basis for a fact that she voluntarily released him from his duty of support. At most, his testimony amounts to a decision, as he says, to take separate places; this implied that she was to continue to work for her living. As the result of this decision announced by himself, she as his wife had to make her way alone among strangers far distant from him. ......This husband's apparent solicitude expressed in some of his letters about his wife's health and her arduous duties in Pittsburgh's hot summer weather, with comments on the picture postal cards which he sent her of the beauties and delights of the lake scenes thereon, are not coupled with any request or offer that she shall come on and share those with him at his expense and rest from her arduous labors. His letters refer to the reminders in flowers, presents, samples of the wines he made which he sent to his other friends on birthdays or festive occasions. He admits he sent not even a Christmas card to his wife; he not only neglected to support her; his conduct toward her by any act of kindness, offer of help, or the comforts which a wife has a right to expect from her husband, was as cold as the frigid zone."

The prevailing rule is that findings of fact of an auditing judge when based upon sufficient evidence, and especially if affirmed by the Orphans' Court, as was done

in this case, will not be disturbed unless error is clearly shown and it appears the facts found were without sufficient evidence to sustain them, as he hears the witnesses testify, and therefore is better able to judge of their credibility: Ike's Est., 236 Pa. 429; Rorabaugh's Est., 229 Pa. 377; Shaw's Est., 54 Pa. Superior Ct. 444. A review of the record in this case shows the conclusion reached by the auditing judge is amply justified by the evidence. The only question for consideration remaining is whether the legal conclusion reached by him is the correct one.

Section 2 of the Act of 1855, provides that whenever a husband "from drunkenness, profligacy or other cause, shall neglect or refuse to provide for his wife, or shall desert her, she shall have all the rights and privileges secured to a feme sole trader." Section 5 of the same act provides "That no husband who shall have as aforesaid, for one year or upwards previous to the death of his wife, wilfully neglected or refused to provide for his wife, or shall have for that period or upwards wilfully and maliciously deserted her, shall have the right to claim any right or title in her real or personal estate after her decease, as tenant by the curtesy, or under the intestate laws of this Commonwealth." Appellant contends the provisions of the second section of the act must be read into the fifth section and that the husband does not lose his curtesy right unless his failure to support his wife has been due to drunkenness, profligacy or other similar cause. There is no force in this contention. Section two relates to the right of a wife to exercise the privileges of a feme sole trader, while section five specifies the conditions or circumstances which operate to bar the husband's right to share in his wife's estate. The two sections deal with separate and distinct matters and each is complete in itself. Under the latter section the husband loses his curtesy rights, either by his neglect or refusal to support his wife or by wilful and malicious desertion. If there is a failure to support proof of desertion is unnecessary:

White's Est., 188 Pa. 633; Shaw's Est., 54 Pa. Superior Ct. 444. Of course, if the parties lived separately through mutual agreement by which the wife voluntarily released her husband from contributing to her support, his curtesy rights are not forfeited. The auditing judge, however, expressly holds there is no testimony to support a finding that Mrs. Randall voluntarily released her husband from his duty to provide her with maintenance, and the mere fact that she did not demand support does not excuse him from the performance of his duty toward her. On the whole we find the conclusion reached by the auditing judge, that appellant wilfully neglected to provide for his wife, is warranted by the evidence and, consequently, his right to share in her estate is forfeited.

Appellant's case rests on his own testimony which was properly admitted notwithstanding his wife's death as the parties to the proceeding are claiming by devolution from the deceased and are therefore directly within Section 5 of the Act of May 23, 1887, P. L. 158: Greenawalt v. McEnelley, 85 Pa. 352; Comly's Est., 185 Pa. 208; Munson v. Crookston, 219 Pa. 419. For the purpose of rebutting the husband's testimony the collateral relatives called as a witness a young woman who had known decedent before she came from Sweden to America and who saw her frequently in Pittsburgh up to the time of her death. This witness was permitted to testify to declarations of the decedent to the effect that she gave appellant $1,500, instead of $314, as testified to by him, and that he took her entire earnings while they were living together and did not support her, and for that reason she was obliged to maintain herself.

We fail to discover legitimate grounds for the admission of these declarations under the exceptions to the rule excluding hearsay evidence; they are self-serving declarations of deceased, not made in the presence of her husband, and not part of the res gestæ of any particular transaction testified to by him, nor were they offered to show the whole of a transaction to which he testified in

part. The auditing judge admitted them on the theory that they tended to contradict appellant's testimony citing Lightner v. Wike, 4 S. & R. 203, and Postens v. Postens, 3 W. & S. 127. In the former case this court held that where a witness for defendant in an ejectment suit testified to the existence of an intimate friendship between him and a deceased testator, through whom both plaintiff and defendant claimed title, evidence of declarations by the testator tending to rebut the existence of such friendship were properly admitted on the ground that the testimony "was not offered to discredit directly the character [credibility] of Ellmaker [the witness], but to show, that what he had sworn was not the truth, because inconsistent with other facts." An important distinction between that case and this is that here the evidence was offered for the express purpose of attacking the credibility of appellant and in addition thereto was self-serving, a fact which did not exist in the Lightner case. In the second case cited, the declarations were properly admitted to show the whole transaction and as part of the res gestæ. Although we conclude that the admission of the testimony in question was erroneous, it does not appear to have been harmful to appellant, as the auditing judge expressly based his conclusion as to the facts on the assumption of the truth of appellant's testimony with respect to the matters covered by the incompetent evidence.

The judgment is affirmed.