## Curry's Estate.

Argued May 5, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER, JAMES and RHODES, JJ.

*H. F. Stambaugh,* with him *Ralph H. Demmler* and *Watson & Freeman,* for appellant.

A. S. *Fingold,* with him *J. H. W. Simpson,* for appellee.

OPINION BY BALDRIGE, J., September 30, 1936:

R. M. Curry died intestate on October 18, 1930, at the age of 76, leaving to survive him four children. He had three paralytic strokes—the first in 1924 and the last in 1929, which physically incapacitated him to a certain extent, but apparently he sustained no serious mental impairment.

At the audit of the account of the administrator d. b. n., which showed a balance for distribution of $1,617.93, the eldest son, Alvin E. Curry, presented a claim for moneys loaned the deceased at various times, in the sum of $4,357. The auditing judge found there was clear and definite proof that the decedent was indebted to the claimant for $921, with $579 interest, or a total of $1,500, and awarded the claimant his prorata share of the fund for distribution, amounting to $779.21. The court in banc dismissed exceptions filed and sustained the decree of the auditing judge. The appeal of Cora B. Klein, a daughter, followed.

Our sole concern in this appeal is whether there was sufficient evidence to support the award.

The general rule is that the findings of fact of an auditing judge, if based upon sufficient evidence and affirmed by the court in banc, as was done in this case, have the force and effect of a verdict of a jury, and they will not be disturbed unless error is clearly shown: *Kvist's Est.,* 256 Pa. 30, 34, 100 A. 523; *Gross's Est.,* 284 Pa. 73, 78, 130 A. 304; *Mahjoubian v. Mahjoubian et al.,* 321 Pa. 354, 184 A. 455.

The claimant was called as a witness at the original hearing on April 17, 1935, but an exception to his testimony in support of any contract or transaction between him and his father was sustained on the ground that he was incompetent. He thereupon called

his wife, who testified that the decedent had acknowledged in her presence that he was indebted to the claimant in the sum of about $4,000, and that he intended to pay him as soon as he made a settlement with a railroad company which had taken a portion of his farm.

Mrs. Sickman, a neighbor, testified that she was in the claimant's home when the deceased borrowed $181 from him. J. Milo Curry, a son of the claimant, testified at an adjourned hearing held June 26, 1935, that in July, 1930, his grandfather acknowledged that he had borrowed money from his father at different times to pay debts, and "said that every cent he owed my father, as soon as he got this case settled he was going to pay him, and they figured it out right on our kitchen table, and it amounted to over four thousand dollars, he said, as near as he could figure." Mrs. Schneider, a daughter of the claimant, also testified that the deceased told her a few weeks before his death that he was indebted to her father and would pay him when the railroad case was settled.

Alvin E. Curry was then called by appellant for cross-examination. He testified that he kept a record at his home of money he had loaned his father at different times. But he did not have it with him as he was not given notice to produce it. As the court below stated, he was called for cross-examination unawares, and should not be criticized for not having his memorandum book in court when he had been excluded from testifying at the former hearing upon objection by counsel for the exceptant. He did, however, have with him certain checks, which he produced, payable to his father, totalling $340, and he said that he had made additional loans to him in various sums of $20 to $100 during the years 1907 to 1931, inclusive. The claimant testified that his father on different occasions acknowledged his indebtedness to him and about a month before he died he sat on his front porch "with

a pencil and a newspaper and he figured up about what I loaned him, you know, at times, and he figured the interest on it, and he says, 'That is $4357 I owe you.' " The claimant was unable to state definitely the dates these moneys were loaned; but it is quite apparent the deceased was in need of cash from time to time to pay interest on mortgages against his farm, etc., and that he borrowed money not only from the claimant, but also from Mrs. Klein and her husband, Peter Klein, and others. The decedent made no record of any of these loans, although he kept accounts of his other transactions involving work done, coal and wheat sold, etc.

It is true that the court below stated that the checks offered in evidence aggregated $440. That was a mistake; they totalled $340; but that error is not vital. There was credible testimony that the claimant had loaned his father money in excess of the sum represented by the checks. In this connection we note that the court in banc said: "We agree with the auditing judge in making the award of $1500. After a close inspection of the evidence, we believe it could have been made in greater amount. It is probable that the father and son, when sitting together, were best able to figure the amount of principal and interest due, which was about $4,000."

We are of the opinion that the claimant has established by sufficiently clear, definite, and satisfactory proof the part of his claim allowed by the court below.

Decree is affirmed, at appellant's costs.