## Jones' Estate

Before Van Dusen, P. J., Sinkler, Klein, Bolger, Ladner and Hunter, JJ.

The facts appear from the following supplemental adjudication of

HUNTER, J., auditing judge. — By adjudication filed September 19, 1946, I disallowed the claim of decedent's husband for an intestate share upon his election to take against the will, on the ground that he had for one year and upward previous to the death of his wife wilfully neglected or refused to provide for her. Exceptions having been filed, the court en banc recommitted the adjudication to me for further consideration in the light of Jac Estate, 355 Pa. 137, decided after the date of my adjudication.

In that case the Supreme Court found against a husband on the double ground of constructive desertion and nonsupport. The wife having left the home of the husband, the burden was on the representatives of the wife to show that she was justified in leaving, which burden was sustained by proof that by reason of his ill treatment her continued existence with him had become intolerable.

In the instant case the wife left the household because of her serious illness. The husband made no attempt to provide for her care. Over a period of some months, she was dependent upon neighbors and friends who came to the house and attended to her needs. One of them wrote to a sister in Ohio apprising her of the wife's illness, and she came East and spent two weeks with her. Later the sister returned and took decedent to her home in Ohio in order that she might care for her. She was not expected to live. These facts were clearly established by several witnesses.

This act of the wife, which was in a sense involuntary, was entirely justified under the circumstances. A leaving because of nonsupport is not wilful and malicious desertion: Finger v. Finger, 72 Pa. Superior Ct. 407. The duty of the husband to support her continued.

The separation occurred in 1924 or 1926, and thereafter while her illness continued and until her death in 1942, the husband entirely neglected to support her.

He left the house a few days after she did, and thereafter made no attempt to establish a home and invite her to it. As was said by Chief Justice Maxey, in Jac Estate, supra: "When a husband and wife separate because of personal disagreements, custom and that chivalry which is properly expected of a husband requires that any initiative taken for a reconciliation is to be taken by him".

The facts showing justification for the wife's leaving, the wilful neglect of the husband to furnish support, and his failure to provide a home, were clearly established by the representatives of the estate, and I find them to be true.

The husband's testimony against these facts, and in support of his contention that his wife released him from the duty to support, is slight, evasive and not worthy of belief, and is not supported by other evidence.

In my adjudication I did not consider whether the husband's failure to supply the necessaries of life and to establish a home was desertion on his part. I rested my decision upon his wilful neglect to provide for her for one year and upward previous to her death. Under the Intestate Act of June 7, 1917, P. L. 429, sec. 5, either cause is a ground for forfeiture.

Where there is a failure to support, proof of desertion is unnecessary: Kvist's Estate, 256 Pa. 30; Buckley Estate, 348 Pa. 311; Nixon's Estate, 104 Pa. Superior Ct. 506, 513; Pruski's Estate, 149 Pa. Superior Ct. 218.

The statement in Jac Estate, supra, that the justification for the wife's leaving "would have to be found in a cause sufficient to entitle her to obtain a divorce" applies more particularly to the charge of desertion which was the principal contention in that case. It is not absence without reasonable cause for a wife to refuse to live with her husband when he does not provide means of support: Finger v. Finger, 72 Pa. Superior Ct. 407, supra. Nonsupport alone is not a cause for divorce under the divorce laws but it is sufficient to work a forfeiture of the husband's rights under the Intestate Act, section 5.

In the instant case the wife was forced to leave for reasons which were beyond her control. She was seriously ill and her life endangered and she left in order to obtain the care and attention which the husband

did not provide, and after her recovery there was no place provided to which she could return.

The husband furnished no support to his wife during the long years of their separation, and especially during the last year of her life.

I confirm the findings and conclusions of my adjudication and dismiss the husband's claim.

And now, January 31, 1947, the account is reconfirmed nisi.

*William Kendall,* for exceptant.
*Lewis Tanner Moore,* contra.

LADNER, J., March 21, 1947. — In this case the auditing judge found that decedent's husband, by reason of his wilful neglect to support or provide for his wife for upward of one year previous to her death, had lost his right of election to take against her will. The exceptions before us raise but the single question whether the auditing judge erred in so finding. It was argued by the able counsel for exceptant that because decedent had left her husband, he was absolved from the duty of support.

It may be conceded that where a wife leaves the common domicile without cause, the husband is relieved of his obligation to support her: Jac Estate, 355 Pa. 137 (1946). But where the separation between husband and wife takes place by mutual consent (Kvist's Estate, 256 Pa. 30 (1917)), or where the circumstances indicate an implied consent on the part of the husband (Commonwealth ex rel., Myerson v. Myerson, 160 Pa. Superior Ct. 432), or where there is a justification for a wife's leaving (Jac Estate, supra), the husband is not relieved of his duty to support his wife unless she has released him. Even where it is shown that the wife after separation never requested support, the husband's right to claim against her will may be barred: Kvist's Estate, supra.

The learned auditing judge, in his supplemental adjudication finds that:

"In the instant case the wife left the household because of her serious illness. The husband made no attempt to provide for her care. Over a period of months she was dependent upon neighbors and friends who came to the house and attended her needs. One of them wrote to a sister in Ohio apprising her of the wife's illness and she came east and spent two weeks with her. Later, the sister returned and took decedent to her home in Ohio in order that she might care for her. She was not expected to live. These facts were clearly established by several witnenses . . . The separation occurred in 1924 or 1926, and thereafter, while her illness continued and until her death the husband entirely neglected to support her. He left the home a few days after she did, and thereafter made no attempt to establish a home and invite her to it."

To this express finding, the auditing judge adds:

"The husband's testimony against these facts and in support of his contention that the wife released him from the duty to support is slight, evasive and not worthy of belief, and is not supported by other evidence."

The auditing judge then concludes:

"This act of the wife, which was in a sense involuntary, was entirely justified under the circumstances. A leaving because of nonsupport is not wilful and malicious desertion: Finger v. Finger, 72 Pa. Superior Ct. 407. The duty of the husband to support her continues."

If it be counsel's contention that under the facts thus found by the auditing judge he should have ruled that the husband was relieved of his duty to support his wife, we do not agree and we hold to the contrary. Chief Justice Maxey in the recent case of Jac Estate, supra, well said (p. 144):

"When a husband and wife separate because of personal disagreements, custom and that chivalry which is properly expected of a husband requires that any initiative taken for a reconciliation is to be taken by him."

That was said in a case where the surviving husband gave up the home and sent the furniture to a friend *60 days* after he and his wife separated and made no effort to locate his wife or induce her to return to him, whereas here the husband closed up the domicile within three days after his wife was taken to her sister's home. And here also the record shows no effort on his part to have his wife resume relationship with him after her recovery from the illness that necessitated her leaving, nor any offer to support her. His failure to support being established, it is not necessary to prove that he was guilty of desertion also: Intestate Act of June 7, 1917, P. L. 429, sec. 5, 20 PS §41; Buckley Estate, 348 Pa. 311; Nixon's Estate, 104 Pa. Superior Ct. 506, 513; Pruski's Estate, 149 Pa. Superior Ct. 218.

On the other hand, if it is the contention of counsel for exceptant that the testimony does not support a finding other than the deceased spouse was guilty of wilful and malicious desertion, we also cannot agree. It is unfortunate, after the legislature in this class of cases made the surviving spouse competent notwithstanding the fact that the one person best able to contradict him was dead, that the Supreme Court did not generally place the burden on the surviving spouse to justify his right to election. Cf. Buckley Estate, supra. However, we have no difficulty in ruling that such a surviving spouse's testimony ought to be closely scrutinized, carefully weighed, and even if called "as for cross-examination" rejected where self-interest, improbability and lack of candor raise doubt of his credibility in an auditing judge's mind. Cf., Stewart's Estate, 54 D. & C. 607, at page 617. Moreover, this

kind of case is peculiarly one for the application of the principle that we will not set aside an auditing judge's findings of fact, unless clear error is shown and it appears that the facts found were without sufficient evidence to sustain them, because he hears and sees the witnesses who testify and is therefore best able to judge of their credibility; Kvist's Estate, 256 Pa. 30 at page 35; Hollins' Estate, 29 D. & C. 307; Kimmey's Estate, 27 D. & C. 608.

With these principles in mind we have read the testimony of exceptant and it does not, even in cold type, impress us favorably. Upon his direct examination he failed to tell the whole story of his wife's leaving, for he neglected to mention her serious illness or that she had to be cared for by the neighbors, or that her sister came on from Columbus, and took her away to give her better care. It was only on cross-examination that he admitted these important facts.

He testified with apparently reckless disregard of truth when he claimed that he helped his wife pay for the property which she had purchased, by contributing "his life savings". Upon cross-examination, it was shown he never had any "life savings"; he evaded the questions as to the amount of his contributions and finally explained that he meant that he gave his wife his weekly wages of $21 to run the household during the five months from the date of marriage to the date she took title.

Equally reckless was his testimony that his wife agreed to accept for her support the rents of premises, 3522 North Carlisle Street. Speaking of this the learned auditing judge said:

"If any finding were dependent upon his testimony alone, I would have no hesitancy in finding that no such agreement was ever made. I come to the same conclusion, however, from the positive fact that title to the property was in the individual name of decedent alone and that claimant had no interest in the rents, there-

fore conceded nothing to his wife by allowing her to receive what in law she was entitled to."

In fine, we are of the opinion that there is not only sufficient testimony of record to sustain the findings of the auditing judge but we agree with him that exceptant's testimony was not worthy of belief.

The auditing judge's findings are approved, the exceptions dismissed and the adjudication is now confirmed absolutely.