# Schreckengost's Estate.

*Decedents' estates—Wills—Husband and wife—Election to take against the will—Separation—Right of wife to take against will.*

Where a testator executed a will in which he made no provision for his wife, the latter can take against the will, notwithstanding the fact that she was not living with her husband at the time of his death, unless her wilful and malicious desertion has been clearly established.

Where the widow had obtained an order of support against the deceased less than a year before his death, and there was no sufficient evidence to contradict the fact of the desertion, the right of the widow to take against the will will be sustained.

*Evidence—Witnesses — Competency of witness — Party dead—Devolution of title — Act of May 23, 1887, P. L. 158, section 5, clause (e).*

Where a widow who claims, by devolution of law, her exemption and other interest in the estate, and seeks to establish her right by evidence relating to matters occurring in her husband's lifetime, she is not a competent witness, where the other parties in interest claim not by devolution, but under the will of decedent. In such case, the claims of the parties are of a different class and are not within the exception of the Act of May 23, 1887, P. L. 158, section 5, clause (e).

An estate is said to devolve upon another when by operation of law, and where without any voluntary act of the previous owner,

it passes from one person to another; but it does not devolve from one person to another as the result of some positive act or agreement between them.

An order of support issued by the court of quarter sessions is admissible in evidence to establish the relations between the widow and her deceased husband.

Argued April 14, 1921. Appeal, No. 121, April T., 1921, by Mary C. Schreckengost, from the decree of O. C. Armstrong Co., Dec. T., 1919, No. 47, sustaining exceptions to adjudication in the Estate of P. W. Schreckengost, deceased. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Reversed.

Exceptions to adjudication. Before KING, P. J.

The facts are stated in the opinion of the Superior Court.

The case was referred to H. L. Golden, Esq., as auditor, who sustained the right of Mary C. Schreckengost to take against the will.

On exceptions to the auditor's report, the court sustained the exceptions, and awarded the fund in the hands of the executor to the devisees under the will. Exceptant appealed.

*Error assigned,* among others, was the decree of the court.

*C. E. Harrington,* and with him *H. A. Heilman,* for appellant.—There was no evidence to establish the wilful desertion of the wife and she was entitled to her legal rights against the decedent's estate: Hahn v. Bealor, 132 Pa. 242; Birchard's Est., 154 Pa. 89; Crandall v. Crandall, 66 Pa. Superior Ct. 153; Bauder's App., 115 Pa. 480; Olson v. Olson, 27 Pa. Superior Ct. 128.

*N. W. Snyder,* for appellee.

OPINION BY HEAD, J., July 14, 1921:

P. W. Schreckengost died seized of the property from the sale of which arose the fund for distribution in the court below. The decedent had executed a will in his lifetime, in which he made no provision at all for his widow, this appellant, but devised and bequeathed his entire real and personal estate to his three grandchildren the appellees here. The widow in due time and manner filed her election to take against the will, and claimed out of the fund the share which the law awards to a widow. The auditor appointed to distribute the fund, recognized the validity of her claim and made an award to her of the amount of the exemption allowed under the law and a proper share in the balance of the fund. Upon exceptions filed to this report, the orphans' court set aside the distribution recommended by the auditor and made a redistribution of the fund, excluding the widow from any share whatever in it. The court was moved to adopt the conclusion reached on the ground that the auditor had erroneously received certain evidence, to which we shall advert, and that the widow was barred from participation in the fund because of the provision of section 6 of the Act of 7th of June, 1917, P. L. 429. It declares: "No wife who shall have, for one year or upwards previous to the death of her husband, wilfully and maliciously deserted her husband, shall have the right to claim any title or interest in his real or personal estate after his decease, under the provisions of this act." As it was agreed by everybody that the claimant was the surviving widow of the deceased testator, manifestly the burden of proof was upon those who asserted she had forfeited her right because of her wilful and malicious desertion of her husband. The auditor found, upon evidence not disputed by any one, that the widow had lived apart from her husband for a period of more than one year prior to his death, but declined to find under the evidence before him that she had wilfully and maliciously deserted him.

On the part of the legatees and devisees who contested the right of the widow, proof was offered to show the fact of an actual separation, and that the deceased husband had a good home and was, in the language of the witnesses, "a good provider." We may concede, at least for the purposes of this discussion, that when it was shown as a fact that the wife had departed from the home in which she and her husband had previously resided and lived separate and apart from him for a period of more than one year, those conditions, unexplained and uncontroverted by any evidence, would warrant a presumption that her desertion was wilful, and from the fact of such wilful desertion persisted in for a year, the further inference of malice could be drawn: Bealor v. Hahn, 117 Pa. 169. These presumptions or inferences, however, were certainly not conclusive and could be rebutted and practically destroyed by affirmative evidence sufficient in quality and quantity to produce that result. To effectuate that purpose counsel for the claimant offered in evidence the record of a proceeding in the court of quarter sessions of the same county, wherein the wife was complainant, charging the husband with nonsupport. A hearing was had in open court, which resulted in a decree on July 2, 1918, "That he, the said P. W. Schreckengost, pay to his wife, Mary Schreckengost, the sum of $5 per week, payable every two weeks...... until the further order of this court, and that he pay the costs of the prosecution." As the testator died on the second of May, 1919, that order was made only ten months before the date of his death. That order of the court of quarter sessions was never appealed from, reversed or set aside, and the payments therein provided for were continued by the defaulting husband down until about the time of his death. The court below, in sustaining the exceptions to the auditor's report, determined that record to be inadmissible as evidence and he consequently rejected it and gave it no consideration

whatever. We are convinced that in this respect the court fell into error.

There was no affirmative proof offered to show that the surviving widow had wilfully and maliciously deserted her husband. The proof offered was of the character already indicated and went no further. The legatees under the will were compelled to rely on the inference which they urged, might and should be drawn from the proof they offered, viz: that what was conceded at least to be a separation of the parties, was in the eyes of the law a wilful and malicious desertion. The widow had the right, as we have said, to rebut that inference and for that purpose we think the record was competent evidence. There was necessarily involved in the adjudication made by it a finding by the court that the marital relation existed between the complainant and the defendant. Out of that relation and its then existence grew the obligation of the husband to support his wife. If it had been shown at the hearing in that case, that the wife had wilfully and maliciously deserted her husband, would the court have made such an order? Would the husband, who had done no wrong, rest contented with such a decree and continue to perform it during the remaining months of his life without making any effort to have it set aside? These considerations show the rather convincing force of the record to overthrow any inference that the wife had wilfully and maliciously deserted her husband. With that record admitted and the inference of a desertion, at least balanced if not overcome, what more do we find in the record to support the conclusion reached by the auditor?

On the 28th of August, 1918, within less than two months from the date of the order of support, the husband wrote a letter to his wife, of which the following is a copy: "To Mary C. Schreckengost: You are hereby notified to remove your household goods by the First of September 1918 and if you fail you will be held to pay $10. per month rent until removed from my house.

(Signed) P. W. Schreckengost." In the face of the order of the court of quarter sessions already referred to, and in the light of the letter just quoted, it appears to us it would have been well nigh impossible for that husband to have successfully assumed the role of a loyal and faithful helpmeet, willing to discharge his marital duties, suffering from a wilful desertion by his wife without any cause whatever. There was also in the record some corroborative evidence as to the character of treatment extended to the wife by this husband, which furnishes warrant for the conclusion that their domestic life was not a happy one and that, while the wife may have been to some extent at fault, the husband bore his share in the creation of a situation which rendered it impossible they should continue to reside in the same dwelling longer. One of the witnesses, a lady past eighty years of age, who roomed in their house for a period, sums up the situation thus: "Q. There was considerable fighting all the time between them? A. Oh yes, they were great for fussing with one another all of the time. Q. They both called one another bad names? A. Oh yes." She further testifies that when the wife, in response to the cordial invitation of her husband, came back to get some of her property "him and her had a scuffle and she got her arm hurt in that scuffle, I guess."

In Carey v. Carey, 25 Pa. Superior Ct. 223, a libellant wife sought a decree of divorce because of the alleged wilful and malicious desertion of her husband. In that case, as in this, there was offered a record from the court of quarter sessions showing that an order had been made upon the husband for the payment of a recurring weekly sum of money for the support of his wife. This court, speaking by Judge W. D. Porter, held that the record was competent evidence and had at least a persuasive probative value, although it was not conclusive to establish the fact of wilful desertion; and this for the very sufficient reason, as the opinion writer pointed out, that under the statute such an order might properly be made

even where there was no separation in fact. We must conclude, therefore, the court below fell into error in rejecting the evidence of the record and refusing to allow it its proper weight in the disposition of the case.

At the hearing before the auditor the surviving widow, the claimant, was offered as a witness in her own behalf and her testimony was received over the objection of opposing counsel as to her competency. If the action of the auditor in this respect can be supported, it must be because he had before him a case wherein "the controversy be between parties respectively claiming such property by devolution on the death of such owner, in which case all persons shall be fully competent witnesses." Did the facts present such a case? In Words and Phrases, vol. 2, 2d series, page 30, we read: "An estate is said to 'devolve upon another when by operation of law, and without any voluntary act of the previous owner, it passes from one person to another; but it does not devolve from one person to another as the result of some positive act or agreement between them. It (the word) implies a result without the intervention of any voluntary actor." How accurate this definition is, is well illustrated by a consideration of our own cases. In Cooke v. Doron, 215 Pa. 393, it became necessary to consider with care the difference existing between title acquired by descent and title acquired by purchase. The exact question raised by the appeal as stated by Mr. Justice ELKIN is "whether an alien husband is entitled as tenant by the curtesy to the real estate, or the interest therein, of which his wife died seized." In the course of the opinion it is about demonstrated that the curtesy title of the husband, like the dower interest of a wife, is acquired by descent rather than by purchase. These respective interests are cast upon them by the law without any voluntary act on the part of the former owner and without any agreement of any character by them. Following the doctrine of that case, we must hold that the right of the surviving widow

in the present case to an interest in the real estate of her deceased husband, or in the fund resulting from its sale, was acquired by descent. That principle fixes her status in the present case.

Now the contesting devisees were in an entirely different class. Upon the death of their grandfather the law cast upon them no interest or estate in this property. Their mother stood between their grandfather and them in the line of descent and, had he died intestate, they could have asserted no more claim to nor interest in his property than strangers to his blood. It required the voluntary act of the deceased grandfather to vest in them an interest in his property and they took it under his will just as they would have taken it under his deed, to wit: by a grant from him. In Munson v. Crookston, 219 Pa. 419, the plaintiffs in ejectment claimed under the will of Agnes Crookston, deceased, while the defendant, the husband of the deceased, claimed possession as tenant by the curtesy, having elected to take against his wife's will. We have there the exact converse of the proposition here, with precisely the same principle controlling the result in either case. In that case the surviving husband was offered as witness in his own behalf to testify to matters occurring in the lifetime of the wife. His competency was asserted in the court below and in the Supreme Court on the proposition that the contest was "between parties respectively claiming such property by devolution on the death of such owner." The Supreme Court held the witness to be incompetent and thus declared the reason for its conclusion: "The husband here claimed by devolution of law, that is, as tenant by the curtesy, an estate by descent, Cooke v. Doron, 215 Pa. 393, while the plaintiff claimed under the wife's will, that is, by purchase. He therefore stood in her place, and the husband's claim was adverse to her title which the plaintiff represented. Had the plaintiff claimed as heir or next of kin, he would have claimed by devolution as the husband did, and both would have

been competent witnesses under the exception quoted."
The situation referred to in the very last sentence quoted
arose in Kvist's Estate, 256 Pa. 30; that is to say, a
surviving husband was claiming his right by the curtesy
in his wife's real estate, whilst the land itself, free from
any such encumbrance, was claimed by her next of kin,
she having died intestate. Mr. Justice FRAZER, in an
opinion affirming the competency of the husband, held
that the parties to the proceeding then in question were
claiming by devolution from the deceased and were
therefore directly within section 5 of the Act of May
23, 1887.

Satisfied, therefore, that the wife's competency is not
supported under clause E of section 5 of the Act of 1887,
we are unable to see that it can be upheld upon the au-
thority of the Act of June 11, 1891. The reason for this
conclusion we believe to be made sufficiently clear by
the language of the statute itself and by reason of the
opinion of Mr. Justice MESTREZAT in Shroyer v. Smith,
204 Pa. 310. We cannot convict the learned court below
of error therefore because he rejected the testimony of
the wife.

How then does the record stand? The claimant was
admittedly the widow of the deceased testator, and
prima facie was entitled to the distributive share in his
estate reported by the auditor. The legatees under his
will undertook to show she had forfeited her right be-
cause of her alleged wilful and malicious desertion,
which desertion was to be inferred from the fact that she
had separated herself from her husband for the period
of a year or more prior to his death. This inference was
in our judgment broken down by a due consideration of
the record of the court of quarter sessions presented to
the auditor; by the attitude of the husband as exhibited
in his own letter and by testimony wholly outside of the
wife herself, all tending to negative in the most em-
phatic way the conclusion that her desertion was wilful
and without cause. In that situation we must go back to

the beginning of the proof and hold that the contesting legatees had failed to establish that the widow had forfeited her right, as widow, because of the provisions of section 6 of the Act of 1917 already quoted. This being so the case of the contesting legatees failed and there remained no legal obstacle in the way to bar the right of the claimant widow to the share of her husband's estate allotted to her by the law.

The order or decree of the court below redistributing the fund is reversed and set aside; the record is remanded to that court with direction to finally confirm the distribution report by the auditor. The costs of this appeal are to be paid by the appellees.