## Rudolph's Estate.

Argued May 4, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER, JAMES and RHODES, JJ.

460

*John B. Nicklas, Jr.,* of *McCrady, McClure, Nicklas & Hirschfield,* for appellant.

*Julius J. Strba,* with him *Maurice H. Goldstein,* for appellees.

OPINION BY RHODES, J., September 29, 1937:

The estate of appellant's wife was distributed to her collateral heirs, and the appellant excluded from participation under the Intestate Act of June 7, 1917, P. L. 429, §5 (20 PS §41). He has appealed from the dismissal of his exceptions to the schedule of distribution and from the affirmance of the decree of the auditing judge by the court in banc. At the conclusion of the taking of testimony on the exceptions the auditing judge found: "The husband, Gustav, did not support her for several years before her death and therefore cannot be a distributee."

Katarina Rudolph married appellant about September 18, 1913; and she died July 24, 1934. They were living together at the time of her death and had been, without interruption, for at least three years prior thereto. They lived together as man and wife for practically the entire period of their married life with the exception of a few months in the latter part of 1930 and the first part of 1931. On May 13, 1931, deceased obtained a divorce a mensa et thoro in the Court of Common Pleas of Allegheny County. This action was uncontested. The divorce was granted on the grounds of cruel and barbarous treatment and indignities to

the person, and it was decreed "that the libellant, Katarina Rudolph, is divorced and separated from the bonds of bed and board contracted between her and the respondent, August [Gustave] Rudolph." After the decree in divorce they resumed marital relations in 1931, which continued until the date of her death.

On December 10, 1931, deceased obtained a feme sole trader decree without the knowledge of the appellant with whom she was then living. On June 23, 1936, this decree was declared null and void by the Court of Common Pleas of Allegheny County as follows: "And now, to wit, June 23, 1936, it appearing to the court from the testimony taken that the decree of December 10, 1931, was obtained upon false testimony such as to constitute a fraud on the court, it is ordered that said decree of December 10, 1931, be vacated and set aside."

After the death of the deceased, her sister, Mary Kowalcek, took out letters of administration on her estate, and distribution was made to her and to the deceased's nephews and nieces in Czechoslovakia. Distribution was suspended pending the outcome of the proceedings for vacation of the feme sole trader decree. Subsequently, after hearing, the exceptions to distribution were dismissed and original adjudication and distribution affirmed. This appeal followed.

The question here involved is, as stated by the court below in its opinion, Did appellant wilfully neglect or refuse to provide for his wife, the deceased, during the last year of her life? No authority need be cited for the statement that findings of fact made by the auditing judge are conclusive, especially when affirmed by the court in banc, if there is evidence to support them. As appellant was living with deceased for more than a year prior to her death the question of desertion does not arise. It remains to be ascertained from an examination of the record whether there was any proof that appellant "for one year or upwards previous to the death of his wife, wilfully neglected or refused to pro-

vide for his wife." The record does not disclose any such definite finding, and it appears that the court's conclusion was based on the assumption that the appellant was obliged to satisfactorily prove that he actually supported his wife. In its opinion the court below states: "He [appellant] must prove satisfactorily that he actually supported his wife." This, as we view it, is not the law applicable to the facts of this case. The burden of proof of appellant's wilful neglect or refusal to provide for his wife during the last year of her life was upon those who asserted that he had forfeited his rights. *Schreckengost's Estate,* 77 Pa. Superior Ct. 235, 237.

The court below likewise fell into error when it stated: "To protect herself, she [deceased] obtained a decree which made her a feme sole trader." The court failed to take into consideration the final decree of the court of common pleas vacating and declaring void the decree which made deceased a feme sole trader, which proceedings were offered in evidence and made a part of the record in this case.

Under the undisputed facts the decree of divorce a mensa et thoro obtained by deceased May 13, 1931, did not shift the burden of proof to appellant. A divorce a mensa et thoro is a judicial separation, giving the parties a locus poenitentiae as it were; it is a separation which is not final; and it does not put it out of the power of the husband and wife to effect a reconciliation. Such a decree creates a legal separation from bed and board, but it does not put an end to the marriage tie; it merely suspends certain mutual rights and obligations of the parties definitely or for a limited time. *Hill v. Hill,* 62 Pa. Superior Ct. 439. The testimony in the case at bar is conclusive and undisputed that there was a reconciliation between the parties after the decree of May 13, 1931, and that for three years prior to her death they lived and cohabited together. This reconciliation and cohabitation had the effect of restoring the marriage

relation and the rights of the respective parties which flow therefrom. See *Hill v. Hill,* supra. In the decree granting the divorce a mensa et thoro there was no provision for alimony. Assuming that alimony had been allowed, it would also have been terminated by the reconciliation of the parties. Section 47 of "The Divorce Law" of 1929 (23 PS §47) ; *Hill v. Hill,* supra.

The decree making deceased a feme sole trader having been vacated and annulled by the court of common pleas on the ground of fraud, the question here involved is merely one of fact, i. e., whether there is any proof whatsoever that appellant for one year or upwards previous to the death of his wife wilfully neglected or refused to provide for her. We do not find any evidence upon which such a finding could be based. There was no affirmative proof offered, by those who had the burden of producing it, to show that appellant had wilfully refused or neglected to support deceased. The only testimony to which any reference is necessary, produced by the collateral heirs claiming deceased's estate, was that of her sister, Mary Kowalcek, who testified: "Q. Did he ever work? A. No. Q. Did he ever earn any money while he lived with Katarina? A. He never had the money. Q. Did he ever go out and make any money? Did he ever have any kind of a job? A. You know when he don't work he had no money. Mr. Nicklas: I have not objected to these questions, but I certainly think they are incompetent. The Court: I want to know what she knows about this man providing for his wife during the last year of Mrs. Rudolf's life. Mr. Strba: Q. Do you know of your own knowledge whether Gustav Rudolf did any work—The Court: It is not a question whether he worked; it is whether he wilfully neglected and refused to provide for his wife, or wilfully and maliciously deserted her. ...... Q. You told us on direct examination that Mr. Rudolf never worked. I would ask you whether it is not true and do you not know about a photograph business and watch repairing

business that he ran at 2340 Carson Street for years? Do you know about that? Mr. Strba: I would like to object unless he restricts his question to the last two or three years of decedent's life. The Court: I will have to overrule the objection. A. Yes, and whatever he earned he drank up."

The auditing judge properly ruled at the time that it was not a question whether deceased worked, but whether he wilfully neglected or refused to provide for his wife. No inference could be drawn from this testimony that the deceased wilfully neglected or refused to provide for his wife. The bald statement of witnesses that appellant did not work is not proof of neglect or refusal to provide, and there is no other testimony that adds anything thereto or is worthy of our consideration. There was much testimony that appellant did work and that he was engaged in various enterprises during his married life and worked at odd jobs. In this connection the court below in its opinion says: "There is no doubt that the husband worked some during the last year of her life and drank a great deal during that period and for many years before." Even if the appellant had not worked, and even if he had been intemperate, such would not be controlling, nor would proof of such facts alone bar him from the share of his wife's estate allotted to him under the law. Appellant's employment during the last year of his married life may have been irregular; his income may have been very meager; he may have been unable to find steady work; he may have been intemperate; nevertheless, his marital rights would not be affected unless the contesting claimants established that he had wilfully refused or neglected to support her at least during the year prior to her death. This they completely failed to do; and the meaning of the act (June 7, 1917, P. L. 429, § 5, 20 PS § 41) is plain and obvious. See *Estate of Alamenczak, alias Kaznowski*, 277 Pa. 546, 121 A. 323; *D'Arros's Appeal*, 89 Pa. 51.

The decree of the court below is reversed; the record is remanded to that court with direction to prepare a schedule of distribution in accordance with this opinion. The costs of this appeal are to be paid by appellees.