## McLiesh Estate.

Argued April 18, 1947. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*Maurice Louik,* with him *Harrison & Louik,* for appellant.

*William L. Jacob,* for appellee.

OPINION BY RENO, J., July 17, 1947:

This is an appeal from the final decree of the court below dismissing exceptions to the decree nisi of the auditing judge and affirming his finding that appellant's testator, James E. McLiesh,[1] forfeited his interest in the estate of his wife, Mary J. McLiesh, by wilfully neglecting or refusing to provide for her for one year or upwards previous to her death.

The children contested their father's right to an interest in their mother's estate, basing their attack upon the Intestate Act of June 7, 1917, P. L. 429, section 5, 20 PS 41, which provides: "No husband who shall have, *for one year or upwards previous to the death of his wife,*

---

[1] James E. McLiesh died subsequent to the hearing in the court below, and by his will devised his entire estate to appellant and appointed her executrix.

*wilfully neglected or refused to provide for his wife,* or shall have for that period or upwards wilfully and maliciously deserted her, shall have the right to claim any title or interest in her real or personal estate after her decease, under the provisions of this act." (Emphasis added). The only question raised here is the sufficiency of their evidence.

The testimony was conflicting, but our attentive study has produced the conviction that the conclusions of Judge BOYLE, who heard the witnesses and appraised their credibility, are fully supported by substantial evidence, and that the children completely discharged the burden of proof resting upon them. His concise and fair summarization of the facts will not bear improvement, and we adopt it: "The decedent and her husband were married in 1918. . . . Although decedent and her husband resided in the same house from 1932 until her death on June 29, 1944, they occupied separate quarters and the marital relationship was not maintained. The testimony shows that the reason for this breach was a course of cruel and barbarous treatment visited upon the decedent by the claimant. He beat her on numerous occasions; he reviled her with obscene language. During the time of their marriage until the death of the decedent, claimant was accustomed to go on drunken sprees. Although he earned substantial sums of money in 1943 and 1944 he contributed nothing to the support of the decedent. The decedent and not her husband was the breadwinner of the family. The decedent worked hard over many years, and without the aid of her husband held her family together and supported herself and her children. From 1932 until the date of decedent's death her husband contributed nothing towards her support." To which might have been added many other specific acts of dereliction. There is seemingly credible testimony by one of the sons that at the undertaker's, while arrangements were being made for the decedent's burial, the husband stated "that he didn't have any interest in the

estate at all, that she [Dorothy, one of the children] would have to take care of all bills." The burial expenses were paid by the daughter, and the mother's estate partially reimbursed her.

There was, to be sure, opposing evidence. The husband denied the charges, and to an extent was corroborated by witnesses. There was, for instance, evidence that the husband assisted his wife in her business, but this was met by the testimony of the children that *she* paid *him* for his services. But the learned auditing judge and the court below did not believe him or them, and our study of the printed record does not convict the court of error.

The decree is sustained by numerous authorities. The burden of establishing that the husband's conduct forfeited his right to share in the estate of his wife was upon the heirs. *Schreckengost's Est.*, 77 Pa. Superior Ct. 235; *Buckley Est.*, 348 Pa. 311, 35 A. 2d 69. However, it was not incumbent upon them to show both desertion and nonsupport, but merely to show one or the other. *Nixon's Est.*, 104 Pa. Superior Ct. 506, 159 A. 172. The findings of fact of an auditing judge affirmed by the court en banc are conclusive upon an appellate court when supported by the evidence. *Pruski's Appeal*, 149 Pa. Superior Ct. 218, 27 A. 2d 292. We may indeed set aside such findings when we discover that they are really inferences drawn from facts rather than pure findings of facts, if they are not correctly reasoned or inferred. *Jac Est.*, 355 Pa. 137, 49 A. 2d 360. But there is no occasion for disturbing the findings before us upon that ground. They rest wholly upon testimony, and the ultimate conclusion flowed naturally and logically from it.

*Rudolph's Est.*, 128 Pa. Superior Ct. 459, 194 A. 311, upon which appellant relies, does not control the factual situation here presented. There the evidence demonstrated only that the husband did not work and was

intemperate, and this court held that proof of those elements was not sufficient to establish nonsupport. Here the evidence shows that the husband worked but neglected and refused to support his wife.

Decree affirmed at appellant's costs.