## Jury Estate.

Argued November 10, 1954.    Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-NOLD, JJ.

*Richard Henry Klein,* with him *Robert McK. Glass,* for appellant.

*W. Irvine Wiest,* for appellees.

OPINION BY MR. JUSTICE JONES, March 21, 1955:

During her lifetime, Olive O. Jury, the decedent was known in her home town, Shamokin, Pa., as a spinster. She had lived there in her parental residence and had taught in the public schools. When she died testate at the age of sixty, her only apparent surviving relatives were certain collaterals. By her last will, which she signed "Olive O. Jury", she devised and bequeathed her residuary estate to her "heirs as provided by the intestate laws of the Commonwealth of Pennsylvania." The will was duly probated and letters of administration c.t.a. on her estate were granted to a local trust company, the executor named in the will having predeceased the testatrix. A final account filed by the administrator showed a balance for distribution, and the Orphans' Court appointed an auditor to make distribution among the parties entitled thereto.

At the hearing before the auditor, one Ned Osthaus appeared and claimed to be the decedent's surviving husband and, therefore, entitled to share in her estate under the dispositive provision of the will. He testified that he and Olive O. Jury were married on July 18, 1931, in Coshocton, Ohio; that no issue was born of the marriage; and that he and his wife were never divorced. He also introduced in corroboration of his testimony an exemplification of the record of his marriage to Olive O. Jury on file in the Record of Marriages in the Probate Court of Stark County, Ohio. The auditor specifically found, and the court below confirmed, that Ned Osthaus is the lawful surviving spouse of the testatrix. Nor do the collateral heirs dispute his status as such. Their contention is that Osthaus *wilfully* neglected or refused to provide for his wife during a period of more than one year prior to her death and that, consequently, he thereby forfeited his right to share in the distribution of her estate: see

Section 6(a) of the Intestate Act of 1947, P.L. 80, 20 PS §1.6(a). As already indicated, Osthaus claims under the testatrix's will and not against it. However, that is of no present importance. Had he elected to take against the will, he would have been met with the same objection by the collateral heirs: Section 9 of the Wills Act of 1947, 20 PS §180.9.

The only testimony adduced by the collaterals in support of their contention came from Osthaus, himself, who, called as for cross-examination, testified that he took up residence in Akron, Ohio, in 1919 and sometime later met Olive O. Jury who was attending summer school sessions at the Western Reserve University; that, during the summer of 1931, when he was 41 and Olive 40, they were married; and that they lived together while she attended summer school but never established a common home. Olive continued to live in Shamokin, where she taught school, and Osthaus lived for a time in Akron, later moving to Scranton, Pennsylvania, in order to take care of his aged and invalid mother. The only other periods during which the parties cohabited were when Olive was attending further summer school sessions and, on one occasion after the death of Olive's father, when Osthaus spent "a week or two" with her in Shamokin. The last time he saw his wife was in 1940, but, subsequent to that, there was some correspondence between them. Admittedly, Osthaus contributed nothing to his wife's support during the two years preceding his wife's death. For that period, his total income was $22.80 consisting of two dividends amounting to $2.80 on a share of stock and $20 which he received for jury duty. With the exception of his one share of stock, Osthaus owned no other property, either real or personal.

On the basis of the foregoing testimony, the auditor concluded (1) that Osthaus had *wilfully* failed to sup-

port his wife for a period of more than a year prior to her death and (2) that, by signing her will with her maiden name, the testatrix had thereby evidenced an intention to exclude her husband as one of those entitled to take under the intestate law. The auditor accordingly held that Osthaus was not entitled to share in the distribution of his wife's estate. Following exceptions by Osthaus, the auditor filed a supplemental report in which he reversed himself in part by holding that the collateral heirs had failed to prove Osthaus guilty of *wilful* nonsupport of his wife but affirmed that he was barred nonetheless from participating in the distribution of his wife's estate by reason of a testamentary intent to exclude him as a devisee and legatee under her will. Both the collateral heirs and Osthaus filed exceptions to the auditor's supplemental report. After argument on the exceptions, the court below reversed both of the auditor's conclusions by holding, first, that there was no basis for concluding that the testatrix had intended by her will to exclude her husband as an heir and, second, that Osthaus's admitted failure to support his wife raised a presumption that such nonsupport was *wilful* and, having failed to rebut the presumption, he had forfeited his right to share in his wife's estate. The court entered a final decree against the husband on the basis of the latter conclusion, and Osthaus brought this appeal.

We agree with the learned court below that there is nothing in the testatrix's will manifesting an intention to exclude her husband from the designation of "heirs" under the intestate law. Section 14 (4) of the Wills Act of 1947, P.L. 89, 20 PS §180.14 (4), declares that, unless a contrary intention appears *in the will,* a devise or bequest to heirs shall be held to include the surviving spouse. It is true, that, at common law, neither spouse was considered an heir as to the other's

real estate. But, both before and after the Intestate Act of 1917, P.L. 429, which made the surviving spouse a statutory heir of the other, the use of the word "heirs" in a will was uniformly construed to include the surviving spouse if no contrary intent is expressed by the will: *Barnard Estate*, 351 Pa. 313, 314-315, 41 A. 2d 578. Such having been the established rule when the testatrix executed her will (June 18, 1941) as well as when she died (December 15, 1951), she is legally presumed to have understood and to have used the term "heirs" in accordance with the meaning which the law ascribed to it. This is especially so since, admittedly, the will was professionally drawn. And, where the plain words of a will clearly disclose the testatrix's intent, there is no occasion for testamentary construction: see *Earle Estate*, 369 Pa. 52, 56, 85 A. 2d 90, and cases there cited.

Certainly, no intention to exclude her husband as an heir is to be deduced from the fact that the testatrix executed her will by her maiden name. That was the only name by which she had been known in her locality throughout her lifetime. She had never assumed use of her husband's surname, and the fact of her marriage had not been generally publicized. No reason appears of record for the parties' withholding from the public knowledge of their marriage. From all that appears, the marital arrangement was perfectly satisfactory to both. But, however that may be, the decedent's testamentary intent is clear enough. She devised and bequeathed the residue of her estate to her heirs as determined by the intestate law, and her husband qualifies as a member of that class.

The question of law with which we are presently concerned is whether the court below erred in holding that the husband's nonsupport of his wife for a period of upwards of a year prior to her death afforded a

presumption that he had *wilfully* neglected or refused to provide for her. Section 6 (a) of the Intestate Act of 1947, 20 PS §1.6 (a), which repeats verbatim, in presently material part, the corresponding provision of the Act of 1917, declares that "A husband who, for one year or upwards, previous to the death of his wife, shall have wilfully neglected or refused to provide for her, or who for that period or upwards shall have wilfully and maliciously deserted her, shall have no title or interest under this act in her real or her personal estate." No contention is here made that there is a forfeiture because of a wilful and malicious desertion. The sole asserted basis for the forfeiture is the husband's alleged wilful nonsupport.

The burden is upon the collateral heirs (the ones so asserting) to establish the truth of their allegation that the husband had *wilfully* neglected or refused to provide for his wife for upwards of a year prior to her death. See *Crater Estate*, 372 Pa. 458, 460, 93 A. 2d 475; *Buckley Estate*, 348 Pa. 311, 312, 35 A. 2d 69; *McLiesh Estate*, 161 Pa. Superior Ct. 292, 295, 54 A. 2d 106; *Rudolph's Estate*, 128 Pa. Superior Ct. 459, 462, 464, 194 A. 311; *Schreckengost's Estate*, 77 Pa. Superior Ct. 235, 237. That such was the collateral heirs' burden, they frankly concede in their brief where they state their contention to be as follows: "The Appellees contend that they have met the burden of proving that the neglect or refusal by the appellant to provide for his wife was wilful." This contention fairly suggests the issue which a majority of this court are of the opinion must be answered in the husband's favor.

Where, as here, the facts are undisputed, an appellate court can competently draw the appropriate inferences and conclusions from the evidence regardless of the action of the court below: see *Noonan Estate*, 361 Pa. 26, 30, 63 A. 2d 80, and cases there cited. All that

the collaterals proved was that the husband had not supported his wife for two years prior to her death. Indeed, the fact is that, for the two years prior to his wife's death, Osthaus, who was then taking care of his aged and invalid mother, was utterly without funds wherewith to contribute to his wife's support had she desired him to do so. There is nothing in the evidence indicating that there had been a change in the marital arrangement between Osthaus and his wife from what it had been from its inception and which was undoubtedly consensual when begun. Neither of them had evidenced any departure from the course both had pursued from the time of their marriage. They apparently chose to live as they did. Never did they exhibit any intention of establishing a common home; nor did they establish one. Olive returned to her teaching position in Shamokin, which made her self-supporting, and Osthaus continued to live in Akron. There is no basis whatsoever in the testimony for inferring that the arrangement was other than mutually agreeable. A wife can voluntarily relieve her husband of his duty to provide for her support: see *Kvist's Estate,* 256 Pa. 30, 36, 100 A. 523. In the absence of proof, it cannot, therefore, be presumed that Osthaus's failure to support his wife was wilful.

In the instant case, the learned court below very effectively read out of the statute the qualifying adverb, "wilfully", by imposing upon the husband the burden of going forward with evidence to disprove that his failure to provide for his wife had been wilful when all that had been shown was his nonsupport of his wife. In construing the statute, we are required to give effect, if possible, to all of its provisions (Section 51 of the Statutory Construction Act of 1937, P.L. 1019, 46 PS §551) and to give the words used their common and ordinary meaning (Section 33 of the

Statutory Construction Act, 46 PS §533). While, etymologically, "wilful", from which the adverb "wilfully" derives, may mean intentional, volitional, deliberate, etc., in common parlance, the word connotes fault, wrongdoing, blameworthiness, etc. Thus, Webster's New International Dictionary (2nd Ed., 1946) defines "Willful" (or "wilful") as meaning not only "Self-determined; voluntary; intentional" but also "Governed by will without yielding to reason; obstinate; perverse; stubborn". That the word "wilful" ordinarily has a broader meaning than intentional or deliberate is evident from the word's general use in common legal phrases designed to imply conscious fault or culpability, e.g., "wilful misconduct", "wilful absence", "wilful omission", etc. To equate "wilfully", as used in the statute under consideration, with "intentionally" would be to give no effect whatsoever to the legislature's use of the term. In short, the result reached by the court below was no different than what it would have been had the statute not employed the word "wilfully".

The cases cited by the appellees are readily distinguishable. In fact, *Buckley Estate,* supra, which the court below also relied upon for its ruling that proof of a husband's nonsupport, without more, affords a presumption of *wilful* neglect and refusal to provide for his wife, impliedly recognized exactly the opposite. In the *Buckley* case, which was concerned with a husband's forfeiture of his right to elect to take against his deceased wife's will because of wilful nonsupport *and* desertion, the husband had been in the penitentiary for more that a year prior to his wife's death. However, that period of nonsupport alone was not sufficient to raise a presumption of wilfulness. Thus, Mr. Justice STEARNE pointedly observed for this court that "the incarceration of the husband for a year and upwards

might not of itself establish either *wilful* desertion or nonsupport . . ." (Emphasis supplied). The opinion elsewhere reveals that the facts which gave rise to a presumption of wilful failure to support were prior incarcerations of the husband in various prisons in Pennsylvania and Ohio over a long period of time, there being no suggestion of any resumed observance on his part, during intervening periods of freedom, of his liability for his wife's support. Nor is it to be overlooked that, in the *Buckley* case, there was a positive testamentary disinheritance of the husband. The testatrix, having made no provision for her husband, expressly declared that he had lost any right to take against her will.

In *Kvist's Estate,* supra, upon which the appellees largely rely, the husband and wife had a common abode for a year or so following their marriage while in the domestic service of the same family, he as a butler and she as a cook. Being unable to secure further suitable employment together, they took positions in different places. Having thus separated, they never again lived together except for one brief period a few years later. Eight years thereafter the wife died. During the time of the separation, the husband made no contribution to his wife's support although the evidence showed that she was frequently in needy circumstances and he had an income until the date of her death. The trial court deemed significant to the question of wilfulness, as indeed it was, the fact that, when they ceased to have a common home, the husband cast his wife among strangers. There is no such evidence in the instant case. Osthaus and his wife lived until her death just as they had from the inception of their marital relationship.

What was said in *Rudolph's Estate,* supra, is peculiarly apposite here. In reversing a decree which for-

feited a husband's right to inherit from his wife because of his alleged nonsupport, the Superior Court said,—"Even if the [husband] had not worked, and even if he had been intemperate, such would not be controlling, nor would proof of such facts alone bar him from the share of his wife's estate allotted to him under the law. [His] employment during the last year of his married life may have been irregular; his income may have been very meager; he may have been unable to find steady work; he may have been intemperate; nevertheless, his marital rights would not be affected unless the contesting claimants established that he had wilfully refused or neglected to support her at least during the year prior to her death. This they completely failed to do . . . ."

The decree is reversed and the record remanded with directions that a decree of distribution be entered in accordance with this opinion; the costs to be borne by the estate.

DISSENTING OPINION BY MR. JUSTICE ALLEN M. STEARNE:

A surviving husband forfeits his interest in his deceased wife's estate when he neglects or refuses to provide for her for one year or upwards previous to her death.

Olive O. Jury, the wife, died testate. By her will her residuary estate is directed to be distributed among her heirs "as provided by the intestate laws of the Commonwealth of Pennsylvania." Since testatrix's testamentary provision was that her residuary estate should be *"distributed among my heirs as provided by the intestate laws of the Commonwealth of Pennsylvania"*, the provisions of the Intestate Act of 1947, infra, are incorporated into the will by reference. Those

take whom the Act includes. Those whom the Act rejects are excluded.

While not affecting the result the majority erroneously states: ". . . [the husband] claims under the testatrix's will and not against it. However, that is of no present importance. Had he elected to take against the will, he would have been met with the same objection by the collateral heirs: Section 9 of the Wills Act of 1947, 20 PS 180.9." Had the husband elected to take against the will he, as the surviving spouse, would not be entitled to receive the $10,000 allowance: Act of April 24, 1947, P.L. 89 sec. 8, 20 PS §180.8 and Commission's Comment.

Section 6 (a) of the Intestate Act of April 24, 1947, P.L. 80, 20 PS §1.6, provides: "A husband who, *for one year or upwards, previous to the death of his wife, shall have wilfully neglected or refused to provide for her, or who for that period or upwards shall have wilfully and maliciously deserted her,* shall have no title or interest under this act in her real or her personal estate." (Italics supplied)

Under (d) of Section 6 of the Intestate Act of 1947, supra, the surviving husband or wife is made a competent witness as to all matters pertinent to the issue of forfeiture. The testimony in this case is exclusively that of the husband.

No useful purpose will be served in restating all the facts. It will suffice to state that Ned Osthaus and deceased, at the respective ages of forty-one and forty, married July 18, 1931, in Ohio, while the wife was attending summer school. The wife, a school teacher, who always used her maiden name, died December 15, 1951. During the twenty years the parties never established a common home. However, during the session of summer school and after the wife's father died, the parties sporadically cohabited. Since October, 1940, the

husband never saw his wife. Correspondence passed between the parties, but the nature and contents thereof was not disclosed. During the entire period of twenty years there is no testimony that the husband ever contributed to his wife's support. During the two years preceding the wife's death there was affirmative testimony that the husband contributed nothing. The record discloses that decedent's estate for distribution is $19,803.41. As there is no issue the husband's share, if allowed, is $10,000 plus one-half the balance, a total of $14,901.70, leaving $4,901.71 for distribution among the wife's next of kin.

Since the husband admittedly contributed nothing toward his wife's support for one year and upwards previous to her death, the pivotal question is whether such neglect or refusal to provide was *"wilful"*, and on whom the burden of proof rested.

That the *failure* to support, in the absence of evidence of inability, acquiescence or other excusing circumstance, is regarded as *wilful* cannot be questioned. *Wilful* means deliberate or intentional. It does not signify corrupt: *United States v. Edwards*, 43 Fed. 67; *Commonwealth v. O'Leary*, 168 Pa. Superior Ct. 569, 79 A. 2d 789; 59 Dick. L. Rev. 127, 138.

There is no question but that the burden of proof *originally* is on the next of kin, but facts upon the record may shift the burden of proof upon the suing spouse. The identical question of burden of proof was presented in a will contest. What Mr. Chief Justice STERN (then Justice) said in *Szmahl's Estate*, 335 Pa. 89, 6 A. 2d 267, has pertinent application. On p. 93 he said: ". . . The acceptance in evidence of the probate merely shifts to contestants temporarily the duty to come forward with evidence, but the proceeding remains at all times a hearing de novo. It is not uncommon in legal procedure for an ultimate burden of proof

to rest upon one party throughout, but for the burden of coming forward with evidence to pass back and forth from one side to the other. If no testimony is offered other than the probate of the will itself, the legal result obviously should be, as the court below decided in the present case, that the probate is not impeached and must be accepted as conclusive, just as if there had been no appeal. . . ."

The next of kin by the husband's own testimony met their initial burden of proof when he admitted that for a year and upwards, 1950 and 1951, he failed to support his wife. Indeed, from the husband's testimony, he had not contributed toward her support during the entire period of twenty years.

It is to be observed that under Section 6 (a) of the Intestate Act of 1947, supra, a husband forfeits his intestate share of his deceased wife's estate (a) if for one year or upwards previous to the death of his wife he shall have *wilfully neglected or refused to provide* for her or (b) for that period or upwards shall have *wilfully and maliciously deserted her*. The burden of proof in either instance is similar.

Judge HUNTER, in his monumental Pennsylvania Orphans' Court Commonplace Book, Vol. 1, p. 662, speaking of desertion, states that while the burden of proof is originally on the heirs, proof that the husband departed from the home and lived separate and apart shifted the burden and required the spouse to show no desertion. The following cases were cited in support of the text: *Jac Estate*, 355 Pa. 137, 49 A. 2d 360; *Schreckengost's Estate*, 77 Pa. Superior Ct. 235; *Mehaffey Estate*, 102 Pa. Superior Ct. 228, 156 A. 746; *Nixon Estate*, 104 Pa. Superior Ct. 506, 159 A. 172.

In *Archer Estate*, 363 Pa. 534, 536, 70 A. 2d 857, this Court, speaking through Mr. Justice DREW (later Chief Justice) said: ". . . when [the heirs] established

[the wife's] withdrawal from the common home, they satisfied that burden and it was then her duty to show that her leaving was not a wilful and malicious desertion: Heath Estate, 156 Pa. Superior Ct. 597, 600, 41 A. 2d 353."

Similar burdens of proof exist in cases of *failure to support*. In *Kvist's Estate*, 256 Pa. 30, 100 A. 523, a man and a woman were married in 1900 and lived together as butler and cook in the same family for one year. In 1904 they obtained employment in different cities. The wife lived with her husband sporadically for the next two years. For the eight years preceding the wife's death in 1914 she lived in Pittsburgh while he lived in the States of New York and Connecticut. She worked under her maiden name, made no requests for assistance and her husband made no offer to assist her nor did he see her for several years previous to her death although there was occasional correspondence between them. It was held that the husband had forfeited his right in his wife's estate by his failure to provide for her for one year immediately prior to her death in the absence of any evidence that she had released him from his obligation to provide for her even though they were living apart by agreement. This Court, speaking through Justice FRAZER (later Chief Justice) said (p. 36): ". . . The auditing judge, however, expressly holds there is no testimony to support a finding that Mrs. Randall voluntarily released her husband from his duty to provide her with maintenance, and the mere fact that she did not demand support does not excuse him from the performance of his duty toward her. . . ."

In *Buckley Estate*, 348 Pa. 311, 312, 35 A. 2d 69, we said: "While the burden of proof of desertion and non-support of a surviving spouse originally was upon the heirs, the facts appearing in this record shifted

the burden to the husband to establish that there had been no desertion and non-support: Schreckengost's Estate, 77 Pa. Superior Ct. 235; Mehaffey's Estate, 102 Pa. Superior Ct. 228, 156 A. 746; Nixon's Estate, 104 Pa. Superior Ct. 506, 159 A. 172. This burden the husband wholly failed to meet. It was not incumbent upon the heirs to show *both* desertion and non-support, but merely to show one or the other."

By his own testimony appellant disclosed that for at least two years prior to his wife's death he had not contributed anything toward her support. He evidenced a total lack of candor. He should have come forward with testimony, if any he had, to prove that failure to support his wife was with her acquiescence and that the parties lived apart by agreement. Since appellant failed to sustain his burden of proof the learned court below properly declared that the husband possessed no interest in his wife's estate. For these reasons I dissent.

Mr. Chief Justice HORACE STERN and Mr. Justice ARNOLD join in this dissent.