IN THE MATTER OF THE ESTATE OF MARY M. F. PISTOR, DECEASED (TRUST FOR THE BENEFIT OF PAULINE SAINSBURY *ET AL.*).

Argued September 15, 1959—Decided October 13, 1959.

*Mr. Rodman C. Herman* argued the cause for the appellant (*Mr. Parnell J. T. Callahan,* of the New York bar, on the brief).

*Mr. Coleman Burke* argued the cause for the respondent Wayne Sainsbury Rae (*Messrs. Bourne, Schmid, Burke and Noll,* attorneys).

*Mr. Maurice Levinthal* argued the cause for the respondent John S. Sainsbury, Jr. (*Messrs. Ward & Levinthal,* attorneys).

*Mr. William C. Connelly* argued the cause for the plaintiff-respondent (*Messrs. Riker, Danzig & Marsh,* attorneys; *Mr. Edward J. Brown,* on the brief).

PER CURIAM. The judgment is affirmed for the reasons expressed in the opinion of Judge Goldmann in the court below.

FRANCIS, J. (dissenting). In order to interpret the particular testamentary expression involved in this proceeding, it is necessary to consider a will drawn in 1887 and a codicil made in 1893. Thereafter three additional codicils were executed, one three months later in 1893, and the others

in 1896 and 1897. Obviously, all of the instruments were prepared by an attorney or attorneys for a testatrix who was conscious of her testamentary responsibility. Unfortunately, in spite of the attention devoted to the disposition of her property, the ambiguity which must now be resolved crept into her devolutionary plan. At this late date, 61 years after her death, our effort can be likened only to a search for the needle of intention in a haystack of words. The majority of my colleagues feel that the Appellate Division found the needle. I do not think so.

In the original will, the testatrix divided her residuary estate into seven equal parts. Six of the portions were given outright to her sons and daughters, with the proviso that if any one of them predeceased her, leaving a child or children, that part should pass to the child or in equal shares to the children, if there were more than one. She testated further that if any of her children predeceased her without a child or children, the part should go to her surviving children and the surviving child or children of any deceased child, her surviving children to take equally and the grandchildren to take "per stirpes and not per capita."

The seventh part was placed in trust for her daughter Pauline, she to receive the income therefrom for life and the principal to pass to her child or children. And if any such child or children were dead, leaving a child or children, the "grandchildren" and "great grandchild or children" were to take, the former to share equally and the latter "to take the share the parent would have taken if then living, and in equal shares if more than one."

Throughout the will Mrs. Pistor spoke of children, grandchildren and great grandchildren. In no instance did she write "heir" or "heirs at law." And it is plain that she was aware of the nature of *per stirpital* distribution among children by representation of a parent. Moreover, it must be noted that she was conscious of the marital status of her children because in the trust referred to above, she declared that the income should be "to the use of my daughter

Pauline, wife of Noel Evrringham Sainsbury, * * * free from the control or interference of her said husband." Later in the first 1893 codicil, when she canceled the bequest of the outright seventh part to her daughter Madelaine, and put it in trust, the same mandate as to Madelaine's husband was inserted with regard to the use of the income. Thus, by language not open to question, husbands and wives of Mrs. Pistor's children and grandchildren were excluded from participation in the *corpus* of the estate and she inveighed specifically against any interference or control of the income by the husbands of the daughters whose shares were assigned to the trusts.

By the first codicil of 1893, about which the controversy centers, the trust for Pauline's life was continued but the provision for distribution of the *corpus* on her death to her children or grandchildren was expunged. Instead, the *corpus* was continued in trust with the specification that upon the death of any of Pauline's children (who would be a grandchild of the testatrix, although not described as such in the codicil), "its * * * share" was given "absolutely to its heirs at law, equally, per stirpes and not per capita."

Why did the testatrix, who, in referring to direct descendants in her original will, always spoke of child or children, grandchild or grandchildren, or great grandchild or great grandchildren, discard such language in this codicil and direct distribution among the heirs at law of a grandchild or grandchildren? The change brought about the present conflicting claims. Daisy Harvey Sainsbury, the widow of a grandchild, Noel Sainsbury, the last surviving life tenant of the trust, asserts that as an heir at law of her husband, she is entitled to share equally with Wayne Sainsbury Rae and John S. Sainsbury, Jr., the great granddaughter and the great-great grandson of the testatrix (daughter and grandson of Noel).

The parties, as the adopted opinion of the majority indicates, are in agreement that New Jersey law is to be applied, that only personalty is to be distributed, and that "heirs at

law" refers to those who would take by intestate succession under the statute of distribution, *N. J. S.* 3*A*:4–2, unless a contrary intention of the testatrix appears in her will. *Meeker v. Forbes,* 84 *N. J. Eq.* 271 (*Ch.* 1915), affirmed 86 *N. J. Eq.* 255 (*E. & A.* 1916); *Lippincott v. Purtell,* 98 *N. J. Eq.* 569 (*Ch.* 1925).

The statute of distribution qualifies a widow as a distributee. *Meeker v. Forbes, supra; Harris Trust & Savings Bank v. Jackson,* 412 *Ill.* 261, 106 *N. E.* 2d 188 (*Sup. Ct.* 1952); *In re Jury's Estate,* 381 *Pa.* 169, 112 *A.* 2d 634 (*Sup. Ct.* 1955). In fact, she has occupied that status in this State at the command of the Legislature since 1795. *Paterson, Laws of New Jersey* (1703–1799), *p.* 156. The enactment represents the conscience of the community and the courts should not disregard it by disinheriting a widow or any other heir unless the conclusion is inescapable that the testator expressly or by necessary implication so willed. *Godfrey v. Epple,* 100 *Ohio St.* 447, 126 *N. E.* 886, 11 *A. L. R.* 317 (*Sup. Ct.* 1919). A testator is presumed to know that a widow is an heir at law and must be deemed to have used the term with an awareness of that import. *In re Mitchell's Estate,* 206 *Misc.* 321, 132 *N. Y. S.* 2d 292 (*Surr. Ct.* 1954); *Shook v. McConnell,* 97 *N. E.* 2d 111 (*Prob. Ct., Ohio* 1951); *In re Jury's Estate, supra.* In case of doubt, a construction of the will which more clearly serves the purpose of the statute should prevail. *Shattuck v. Fagan,* 337 *Mich.* 83, 59 *N. W.* 2d 96 (*Sup. Ct.* 1953); *In re Burk's Will,* 298 *N. Y.* 450, 84 *N. E.* 2d 631 (*Ct. App.* 1949), rehearing denied 299 *N. Y.* 308, 86 *N. E.* 2d 759 (*Ct. App.* 1949), and 300 *N. Y.* 498, 88 *N. E.* 2d 725 (*Ct. App.* 1949); *Schouler, Law of Wills* (1887), § 479. In ordinary circumstances, the interests of widows are to be carefully guarded. *In re Klingenberg's Estate,* 94 *Cal. App.* 2d 240, 210 *P.* 2d 514 (*D. Ct. App.* 1949); and see *Hand v. Marcy,* 28 *N. J. Eq.* 59 (*Ch.* 1877); *In re Mitchell's Estate, supra.* And in our State, where the lot of the wife in the estate of her husband has not improved substantially in the last hundred

years, an interpretation of a will which deprives her of the statutory share should be accepted with great reluctance and only when the language is open to no other reasonable conclusion. See *In re Santelli's Estate,* 28 *N. J.* 331 (1958); *Flexible Restraints on Testation,* 69 *Harv. L. Rev.* 277 (1955).

From all that has been said, it must be assumed that the testatrix knew and intended the implications of the term "heirs at law" when she inserted it for the first time in the codicil in question. And it cannot go unnoticed that she used it in connection with the distribution of a trust *corpus* which probably would not take place for four generations. No testatrix could foresee what the state of her direct descendants would be at that distant time. Perhaps this accounts for her failure to use "direct heirs" which would have been consistent with the pattern of the original will. *Cf. Cook v. Underwood,* 209 *Iowa* 641, 228 *N. W.* 629 (*Sup. Ct.* 1930). Conceivably at that remote time there might be no descendants of children and it is not unreasonable to conclude that she decided to let the law take its course and parcel out the trust to those persons who would then constitute her heirs at law. Thus in a factual context like the present one, regard must be had not only for what is but also for what might have been. Such reasoning gives recognition to the principle that when different words are employed with reference to a given subject matter, the law assumes that the testator intended a different meaning to be given to them. 2 *Page on Wills* (*3d Ed.* 1941), § 933, *p.* 880.

The majority feel that because the text used was "heirs at law, *equally, per stirpes and not per capita*" (emphasis added), Mrs. Pistor intended to refer to direct descendants in the blood line as she had in the original will and that the expression "heirs at law" brought no new or broader connotation into the testamentary disposition. They find that distribution according to the statute, is precluded because of the word "equally," which is said to be inconsistent with

the statutory apportionment of the estate. They recognize that "equally" in the context is at war with "per stirpes," but conclude that its meaning should be limited to an indication that distribution according to the statute was not desired. That is a slim reed upon which to oust the widow and to me it makes the will come from the construction, not the construction from the will. It flies in the face of the doctrine that where the intention is expressed ambiguously or obscurely, that interpretation should be adopted, if consistent with other testamentary rules, which will dispose of the property in a just and reasonable manner, a manner which accords with natural justice and the policy of inheritance as provided by our law. *Baker v. National Savings and Trust Co.*, 86 *U. S. App. D. C.* 161, 181 *F. 2d* 273 (*D. C. Cir.* 1950); *Smith v. Garber*, 286 *Ill.* 67, 121 *N. E.* 173, 175 (*Sup. Ct.* 1918); *Godfrey v. Epple, supra*, 126 *N. E.* at *page* 888.

I agree that distribution according to the *precise* terms of the statute was not intended, that is, one-third to a widow and two-thirds in equal portions among the children and such persons as legally represent any child who may have died, *i. e., per stirpes* and not *per capita*. This conclusion flows from the word "equally." "Equally" signifies *per capita* distribution, an equal division of property among the beneficiaries, without reference to the intermediate course of descent from the deceased. It conflicts with *per stirpes* distribution, which connotes a division with reference to the intermediate course of descent from the ancestor; it is an apportionment according to stock, and the share of each beneficiary may not be equal because his portion of the share of the ancestor depends upon the number of persons in his class of the stock.

As has been suggested, when this codicil was executed, the number and remoteness of the heirs at law of Mrs. Pistor's grandchildren at the death of the last life tenant could not even be conjectured. That life tenant might have no descendants, but since the testatrix had seven children, he

might have nephews and nieces of varying degrees of kinship. He might have a wife and no children. The entire blood line of the testatrix might have passed on, leaving only the life tenant's widow. (At this point it might be well to note that under the majority view the widow would not take, even in this event.) In the face of the unknown future with respect to heirs, Mrs. Pistor provided that this trust *corpus* should pass to the heirs at law of the last life tenant "equally." That is, the division should not be one-third to a widow and two-thirds, as specified by the statute, to other heirs who qualified as such; it should be apportioned equally or *per capita* among them. Seventeen years before this will was drawn, the Court of Chancery accepted such a result as representing settled doctrine. In *Scudder v. Vanarsdale,* 13 *N. J. Eq.* 109, 113 *(Ch.* 1860), the Chancellor said:

"When the property under a bequest passes to the persons entitled, under the statute of distributions, to receive it, *in the absence of any express direction in the will,* it will go in the proportions prescribed by the statute. In such case, where they are not all in equal degree, the children of those deceased will take, by right of representation, *per stirpes* and not *per capita.* * * *

But the will, in this case, expressly directs that the fund shall be divided *equally* among all the heirs. In such case, the direction must prevail, and the legatees take *per capita.*" (First emphasis added)

To like effect are *Hartford-Connecticut Trust Co. v. Beach,* 100 *Conn.* 351, 123 *A.* 921 *(Sup. Ct. Err.* 1924); *Smith v. Garber, supra; Coppedge v. Coppedge,* 234 *N. C.* 173, 66 *S. E. 2d* 777 *(Sup. Ct.* 1951), rehearing denied 234 *N. C.* 747, 67 *S. E. 2d* 463 *(Sup. Ct.* 1951).

A pertinent expression of the same view appears in *Kramer v. Larson,* 158 *Neb.* 404, 63 *N. W. 2d* 349, 353 *(Sup. Ct.* 1954), where the Supreme Court of Nebraska stated:

"The more acceptable and better reasoned view is that if property is given or devised to heirs of the testator without naming them that this requires a reference to the statute of descent and distribution

to determine who will take by virtue of the provisions of the will; that the beneficiaries take in the proportion prescribed by the statute; and that if the beneficiaries are not of equal degree they will take *per stirpes* in the absence of a declaration in the will to the contrary. The basis of this is that the testator having made a resort to the statute necessary to ascertain who are his beneficiaries intended that *it should also govern the proportion which they should take unless he expressed in the will a different intention.* This is not true if the testator directs the mode of distribution, as he did in this case, and it must be made as his will provides. The testator of the will in question by the phrase 'my heirs at law' designated his residuary beneficiaries and by the words 'share and share alike' he prescribed the manner in which they should take. The language used is appropriate to make the intention manifest. He thereby definitely indicated the *quantum* of the estate which each of his residuary beneficiaries should have. He did not intend that his 'heirs at law' should have the residue of his estate in the proportions provided by the statute as they would have taken if he had died intestate. That would not have been 'share and share alike.' " (Emphasis added)

Under the circumstances, it is only reasonable to conclude that the word "equally" was intended by Mrs. Pistor to signify that she wishes an equal division among her heirs at law. But my colleagues say that such interpretation cannot stand in the light of the immediately succeeding words "per stirpes and not per capita." They agree with the Appellate Division view that in the context "equally" and "per stirpes and not per capita" cannot be harmonized with my conclusion. But the disharmony is more apparent than real. What then was the qualification, if any, imposed upon "equally" by the phrase "per stirpes and not per capita"? To me it means that the executrix desired the heirs at law to take equally by classes of heirs but she wished also to preserve representation among the classes. To illustrate: If the last life tenant left a widow, two sons and two grandsons (sons of a deceased son), "equally," standing alone, would mean that each of the five heirs at law would take a like portion. But the qualification "per stirpes and not per capita" denotes that the heirs should take by classes with representation preserved. As a result, the class at the primary taking level would be considered as containing four heirs: the widow and the three sons (one of them deceased).

Consequently, the *corpus* of the trust would be divided into four equal shares, the widow taking one share, each of the living sons receiving one share, and the grandsons, taking *per stirpes* as representatives of their father, each one-half share. As was said in *Wooley v. Hays*, 285 *Mo.* 566, 226 *S. W.* 842, 844, 16 *A. L. R.* 1 (*Sup. Ct.* 1920):

> "But where the devise is to the testator's 'heirs' or 'lawful heirs,' 'share and share alike,' or using other words importing an equal division, the 'heirs' or 'lawful heirs,' although related in different degrees to the testator, as brothers and sisters and nieces and nephews, are treated as constituting but one class of devisees who will take equally per capita unless by the will they are separated into different classes, or there is something in the will showing a different intent."

In this case the "different intent," *i.e.*, the intent not to have all of the living heirs at law take "equally" as a single class, is demonstrated by the addition of "per stirpes and not per capita." That phrase reveals the probable intention of the testatrix to have been equality by classes of heirs with representation within the classes. As has been indicated, the testatrix had seven children, and over four generations the collaterals of any child or grandchild (the last life tenant was a grandchild) might be numerous and of different degrees of consanguinity. If the wife predeceased him but some nephews and some grandnephews survived him, under the then well known law representation was not permitted beyond the children of brothers and sisters. *Lippincott v. Purtell, supra*, 98 *N. J. Eq.* at *page* 571. So in the illustration given above, the nephews would take to the exclusion of the grandnephews unless some words were employed in the will to reveal a wish to have representation in the classes beyond brothers' and sisters' children.

Applying what has been said to the facts before us, it would appear that by reason of the statute the heirs at law in the class at the primary taking level would be Noel Sainsbury's widow, his daughter, and his (deceased) son. "Equally" in the will means that they would have taken

*per capita* if all were alive at the termination of the trust. Thus, the *corpus* division would be into three equal shares, one to go to the widow, one to the daughter, and because of the "per stirpes and not per capita" provision, the third share would go by representation to the son's children. Since John S. Sainsbury, Jr., is his only child, representation does not require any further division and John, Jr., takes a full third share.

In my view, such a construction gives significance to all the words of the testatrix' will. It blends the words with her reasonable and probable intention, and it conforms with the rules of construction that are most in harmony with justice and equity and the public policy of our State.

Accordingly, I would modify the judgment so as to direct distribution of one-third of the *corpus* to the plaintiff widow, Daisy Harvey Sainsbury.

The Chief Justice and Justice JACOBS have authorized the statement that they join in this dissent.

*For affirmance*—Justices BURLING, PROCTOR, HALL and SCHETTINO—4.

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS and FRANCIS—3.